[No. A060330. First Dist., Div. Three. June. 29, 1993.]

GRANGE DEBRIS BOX AND WRECKING CO., INC., et al., Petitioners, v. THE SUPERIOR COURT OF MARIN COUNTY, Respondent; CITY OF SAN RAFAEL et al., Real Parties in Interest.

COUNSEL

Hans W. Herb for Petitioners.

No appearance for Respondent.

Bennett & Rowland, Herbert M. Rowland, Jr., Allison D. Daniels and Allison Lane for Real Parties in Interest.

Carr, McClellan, Ingersoll, Thompson & Horn and Alan Robert Rosin as Amici Curiae.

OPINION

WHITE, P. J.—Code of Civil Procedure section 337.15,[1] enacted in 1971, imposes "an absolute requirement that a suit against a contractor to recover damages for a construction defect be brought within 10 years of the date of substantial completion of construction, regardless of the date of discovery of the defect." (*Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 631, fn. omitted [147 Cal.Rptr. 486, 581 P.2d 197].) Subdivision (c) of the statute, in "clear, unambiguous, and reasonable" language, states one exception—a transactionally related cross-complaint for indemnity may be filed outside the 10-year limit if the main action has been brought within the 10-year period. (*Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 609 [189 Cal.Rptr. 871, 659 P.2d 1160].) In the case before us, by overruling a demurrer the court has proposed to extend this exception for an indemnity cross-complaint when both the main action and the cross-complaint were filed outside the 10-year period. We conclude the court erred and we direct issuance of a writ of mandate.

*Procedures*

Petitioners, Grange Debris Box and Wrecking Co., Inc. and Fred Grange (referred to collectively as Grange hereafter), were brought into this action at the third level of pleading. The original action was against several oil companies, including Exxon Corporation. Exxon cross-complained against the City of San Rafael and others. San Rafael, in turn, cross-complained against Grange and others.

The subject matter of the lawsuit is a piece of property used as the site of a gasoline filling station before being redeveloped for a commercial office

---

[1] All further statutory references are to the Code of Civil Procedure.

building. On September 19, 1990, the building owner, Tri Equities, Inc., brought an action against Exxon and other oil companies claiming they contaminated the site by releasing hydrocarbons into the soil and water table in the 1960's and 1970's. Exxon cross-complained against San Rafael and others, contending when San Rafael purchased the site for redevelopment it agreed to hold Exxon harmless for any claims for damage to the property. Exxon also claimed San Rafael negligently permitted contamination in 1979 while excavating and preparing the site for construction of an office building.

On March 13, 1992, San Rafael cross-complained against Grange and others for indemnity in the event of a recovery against San Rafael. The cross-complaint alleged San Rafael contracted with Grange to demolish the existing structures on the site, remove underground tanks, remove and dispose of debris, cap sewer laterals and undertake minor grading and other miscellaneous work. It further alleged Grange was contractually required to indemnify and hold San Rafael harmless for any liability from the Exxon cross-complaint or the underlying complaint.

Grange demurred to the cross-complaint on statute of limitations grounds and requested judicial notice of a certificate of completion. The certificate showed Grange completed its work on July 24, 1979, more than 11 years before the original complaint and 12½ years before the cross-complaint against Grange. After hearing, the court overruled the demurrer. The court took judicial notice of the "Notice of Completion" but reasoned that because San Rafael was barred by section 337.15, subdivision (e), from asserting the 10-year limitation period against Exxon, Grange was barred from asserting it against San Rafael's claim for indemnity. This petition followed.

*Statute of Limitations*

Section 337.15, subdivision (a) states the statute of limitations for latent construction defects in the following terms: "No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. (2) Injury to property, real or personal, arising out of any such latent deficiency."

The statute does not define a development or an improvement, but decisional law has imported definitions from other statutes. In *Liptak v. Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762 [167 Cal.Rptr. 440], defendants were involved in the grading, filling, and maintenance of slopes in a residential housing tract 11 years before the action was brought. The plaintiffs contended defendants could be sued if the complaint was filed within 10 years of completion of the particular plaintiffs' home. *Liptak* disagreed.

The *Liptak* court examined definitions of "development" and "improvement" and concluded that, as used in section 337.15, " 'an improvement' is in the singular and refers separately to each of the individual changes or additions to real property that qualifies as an 'improvement' irrespective of whether the change or addition is grading and filling, putting in curbs and streets, laying storm drains or of other nature. [¶] A developer has the overall control over the development of a 'tract of raw land' and the myriad of improvements to the land which eventually complete the development. A person contributing to 'an improvement' carries out only one of many steps towards completion of the development." (*Liptak v. Diane Apartments, Inc., supra,* 109 Cal.App.3d at p. 771.) Based upon this interpretation, *Liptak* concluded the 10-year statute began to run as to grading and filling defendants when they completed their phase of the development: "The 10-year period commences to run in respect to a person who has contributed towards 'an improvement' when such improvement has been substantially completed irrespective of whether or not the improvement is part of a development." (*Id.,* at p. 772.)

### Application of the Statute of Limitations

The original action by Tri Equities against Exxon and others alleges contamination of the soil and water, not construction defects. Thus, section 337.15 does not apply to Tri Equities' complaint. However, Exxon's cross-complaint against San Rafael and its redevelopment agency, filed in late 1991 or early 1992, alleges negligent contamination in 1979 while excavating and preparing the site for construction of an office building.

Section 337.15 appears to bar the Exxon cross-complaint because it alleges a latent defect during improvement of the property more than 12 years before filing of the complaint. However, subdivision (e) of section 337.15 prevents San Rafael from asserting the statute of limitations: "The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the

improvement constitutes the proximate cause for which it is proposed to bring an action."

 The superior court, citing *Martinez v. Traubner* (1982) 32 Cal.3d 755 [187 Cal.Rptr. 251, 653 P.2d 1046], concluded that because San Rafael could not assert the statute neither could Grange. In *Martinez*, a worker was injured in 1978 when he fell from the roof of a house on which he was working. He sued the builder of the house, alleging that the roof collapsed due to a latent defect in construction completed in 1959. The *Martinez* court concluded section 337.15 did not govern actions seeking damages for personal injuries, but was limited to actions "for damages for (1) the deficient work or property itself and (2) damage to other real or personal property arising from such deficiency." (*Martinez, supra*, at p. 759.)

*Martinez* disapproved a contrary holding in *Ernest W. Hahn, Inc.* v. *Superior Court* (1980) 108 Cal.App.3d 567 [166 Cal.Rptr. 644], and suggested *Hahn*'s interpretation "leaves the owner or possessor of property in a position where he or she can be held liable to a person injured as the result of a latent defect without the right to any redress against the contractor or developer who created the latent deficiency (by virtue of the provisions of subd. (e) of § 337.15, which bars the person in possession from asserting the defense of this 10-year limitation). Such a result turns reason upside down." (*Martinez v. Traubner, supra*, 32 Cal.3d at p. 760.)

If section 337.15 were silent about the application of the 10-year statute to indemnity cross-complaints, the *Martinez* dictum might encourage us to sustain the superior court's ruling. However, subdivision (c) of the statute specifically addresses the issue: "As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 [which authorizes transactionally related cross-complaints] *in an action which has been brought within the time period set forth in subdivision (a) of this section*." (Italics added.)

Pursuant to subdivision (c) of section 337.15, if the action is timely under subdivison (a) (brought within 10 years of substantial completion of the development or improvement), a transactionally related cross-complaint may be brought outside the 10-year period. The subdivision does not cover the situation presented here—a cross-complaint in an untimely action in which the defendant is an owner who is barred by subdivision (e) from asserting the defense of untimeliness.

*Sandy* v. *Superior Court* (1988) 201 Cal.App.3d 1277 [247 Cal.Rptr. 677], addressing the issue presented here, comprehensively explained the operation of section 337.15, subdivision (c). Sandy was an architect involved in the 1970-1971 construction of an apartment complex. Between 1979 and 1981, Daon Corporation purchased, renovated and sold the apartment units as condominiums. In 1983 the condominium homeowners' association brought a timely action against Daon for damages from construction defects. Daon cross-complained for indemnity against Sandy and against the original owner/developer/builder and others. Other defendants or cross-defendants, including Klingbeil, general partner of the original owner/developer/builder, cross-complained against Sandy. The *Sandy* court ordered summary judgment for Sandy on all the cross-complaints against him.

*Sandy* first determined that the cross-complaints based on Sandy's negligence in 1971 were not transactionally related to the complaint about Daon's improvements between 1979 and 1981. (See *Time for Hiring, Inc.* v. *Guy Hatfield Homes/All American Development Co.* (1991) 230 Cal.App.3d 30 [280 Cal.Rptr. 904] for a different result on different facts.) Then, in answer to Klingbeil's arguments, the court addressed the issue framed here: "Klingbeil argues that it may be held liable to plaintiffs under the exception to limitations embodied in section 337.15, subdivision (e) when the defendant is in possession or control of the property. While disputing plaintiff's contention [that Klingbeil may be held liable], it claims the right to cross-complain against Sandy. This argument rests on the same fallacy as Daon's position; timeliness of the lawsuit as to Klingbeil would not establish timeliness as to Sandy. The language of subdivision (c), providing the exception for cross-complaints for indemnity, not only specifies the need for transactional relationship, but also prescribes that the cross-complaint is deemed timely only if the principal action has been filed within 'the time period set forth in subdivision (a) of this section,' i.e., the 10-year period. If a complaint against Klingbeil were not timely as having been filed within 10 years, but rather, were to be held timely only by virtue of subdivision (e) based on actual possession or control, the statute would provide no exception for one in Klingbeil's shoes to cross-complain for indemnity beyond the 10-year period." (*Sandy* v. *Superior Court, supra,* 201 Cal.App.3d at p. 1284.)

*Sandy* explained the policy danger in allowing the action to proceed against Sandy: "[The risk of perpetual exposure to liability for contractors and others in the construction industry] is inherent in [Daon's] interpretation of section 337.15. Daon is a subsequent improver of the property. The association has sued Daon more than 10 years after the completion of the

original project, a date at which all then concerned with the initial construction should have been entitled to assume freedom from liability provided there was no complaint on file on that 10-year anniversary alleging damages resulting from the original work. No such complaint was then on file. Yet, by the fortuitous circumstance that a subsequent improver may have exposed itself to liability for the work it has done, is that repose suddenly to be ended, and the original workers on the project rendered liable beyond the time when the statute says they may be sued? Plainly this is not what the Legislature intended. [¶] . . . [¶] This interpretation insures a finite, predictable period of exposure to liability for completed work. Ten years after completion of a work of construction, if no complaint is yet on file against any of the participants, they may all assume their exposure has ended. Under the contrary interpretation, this repose could never occur; instead every subsequent renovation would raise the liability spectre anew. Hardy would be the person who ventured into the construction industry under such conditions, assuming he could get liability insurance at all. [Citations.]" (*Sandy v. Superior Court, supra,* 201 Cal.App.3d at pp. 1285-1286.)

Finally, *Sandy* addressed the relationship between section 337.15 and rules about accrual of causes of action: "Daon argues that a cause of action for indemnity does not accrue until loss by payment occurs; therefore Daon's cross-complaint cannot yet be barred as to Sandy. (Citing *Valley Circle* [*Estates* v. *VTN Consolidated, Inc.*], *supra,* 33 Cal.3d [at p. 611].) However, although the general proposition is correct, we hold that in this situation the specific provisions of section 337.15 control regarding latent defects, and provide a 10-year cutoff which applies even in advance of the judgment against the tortfeasor seeking indemnity. This narrow issue appears to be of first impression in California. We believe such interpretation of the statutes is essential to prevent clear violation of the legislative intent reflected by the 10-year statute. Otherwise, as we have stated, perpetual liability would result. This result works no injustice here because, as explained above, Daon is not liable to plaintiffs for the claimed defective design of Sandy, but solely for its own work on the project. The Legislature has decreed that even as to latent defects, 10 years is long enough for there to be liability exposure." (*Sandy v. Superior Court, supra,* 201 Cal.App.3d at p. 1286.)

### San Rafael's Contentions

### Stare Decisis

We have asked San Rafael to explain why the superior court was not required to follow *Sandy,* particularly its discussion of Klingbeil's indemnity

cross-complaint. San Rafael gives us two inadequate answers: (1) *Sandy* conflicts with *Martinez* and a prior decision by this court *(Grimmer* v. *Harbor Towers* (1982) 133 Cal.App.3d 88 [183 Cal.Rptr. 634]), and (2) this appellate court is not bound by decisions of appellate courts in different districts. San Rafael asserts the *Sandy* court violated the principles of stare decisis. Relying upon *Hickman* v. *Mulder* (1976) 58 Cal.App.3d 900 [130 Cal.Rptr. 304], San Rafael informs us we are obligated to follow the *Martinez* discussion even if it states only a dictum.

We disagree with San Rafael's explanation of stare decisis and the role of dicta. ■ Although *Hickman* v. *Mulder, supra,* 58 Cal.App.3d at page 902 does suggest Courts of Appeal may be bound by California Supreme Court dicta, the overwhelming weight of authority is contrary.

The issue in *Hickman* was whether an action for willful waste was barred by antideficiency statutes when the plaintiff repurchased the property for less than the full amount of the default. *Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981], during an exhaustive analysis of the history of antideficiency legislation, stated the principle that such an action could be brought if the waste were not merely the result of the economic pressures of a market depression but were caused by reckless, intentional, or malicious despoiling of the property. The discussion was a dictum in *Cornelison* because plaintiff's action was barred by her full-credit bid for the security. *Hickman* interpreted the dictum as overruling *Schumacher* v. *Gaines* (1971) 18 Cal.App.3d 994 [96 Cal.Rptr. 223], applied the dictum, and overstated stare decisis: "The case is squarely controlled by a dictum in *Cornelison* v. *Kornbluth,* 15 Cal.3d 590 [125 Cal.Rptr. 557, 542 P.2d 981], and in obedience to that dictum we must reverse the judgment of dismissal." *(Hickman* v. *Mulder, supra,* 58 Cal.App.3d at p. 902.)

*Hickman* notwithstanding, dicta of the California Supreme Court does not *control* lower courts. "Such dictum, while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic. [Citations.]" *(Smith* v. *County of Los Angeles* (1989) 214 Cal.App.3d 266, 297 [262 Cal.Rptr. 754]. Accord *Chevron U.S.A., Inc.* v. *Workers' Comp. Appeals Bd.* (1990) 219 Cal.App.3d 1265, 1272 [268 Cal.Rptr. 699]; *Bunch* v. *Coachella Valley Water Dist.* (1989) 214 Cal.App.3d 203, 212 [262 Cal.Rptr. 513]; *Santa Monica Hospital Medical Center* v. *Superior Court* (1988) 203 Cal.App.3d 1026, 1033 [250 Cal.Rptr. 384].)

■ The Supreme Court dictum in *Martinez* neither demonstrated a thorough analysis of the issue before us nor reflected a compellingly logical

interpretation of section 337.15. By contrast, *Sandy* thoroughly analyzed the issue of cross-complaints in actions brought outside the 10-year period and stated a compelling interpretation of section 337.15. Furthermore, the *Martinez* dictum did not suggest San Rafael should be permitted to seek indemnity for *property damage* claims filed outside the 10-year limit. It stated only that it would be unreasonable to hold a possessor of property like San Rafael liable for *personal injury* claims if a contractor such as Grange created the latent defect leading to the injury. Thus, even if applied to this case, the dictum would not justify the superior court's ruling.

*Express Indemnity*

■ Finally, San Rafael contends section 337.15 does not apply to cross-complaints asserting express contractual indemnity. San Rafael notes *Sandy* did not specifically address applicability of section 337.15 to express indemnity cross-complaints.

Section 337.15 does not distinguish between implied equitable indemnity cross-complaints and express indemnity cross-complaints. It broadly defines an "action" to include an action for indemnity arising out of performance or furnishing of services or materials. San Rafael asks us to carve out a case law exception to the statute, but provides us no evidence that the Legislature intended such an exception.

If, as the allegations here suggest and our experience confirms, construction agreements often provide for indemnification, this exception could eviscerate the rule and thwart the Legislature's purpose of protecting contractors from suits over construction undertaken decades earlier. We agree with the dictum in *Regents of University of California v. Hartford Acc. & Indem. Co., supra,* 21 Cal.3d at page 639, footnote 9, which construed the statute to apply to actions for "contractual or implied indemnity between parties to the construction of the development or improvement."

*Disposition*

■ Having concluded the superior court erred in relying upon the *Martinez* dictum instead of *Sandy*'s directly applicable holding, we need only consider whether the court should have sustained the demurrer and whether we should issue a writ of mandate to compel it to do so.

■ When a complaint shows on its face (or with the help of judicially noticed facts) the cause of action is apparently barred by the statute of limitations, plaintiff must plead facts which show an excuse, tolling, or other

basis for avoiding the statutory bar. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 877-881, pp. 319-323.) ■ The cross-complaint and judicially noticed notice of completion here show more than 11 years between completion of the work and the cross-complaint and filing of the action against San Rafael and more than 12 years before filing of the cross-complaint against Grange. The complaint asserts no facts showing a legal exception, tolling, or excuse. Thus, the court erred in overruling the demurrer.

■ Although we are generally reluctant to issue writs at the pleading stage, we may be persuaded to do so where the error is clear and substantially prejudices petitioner. (See *Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1273-1274 [258 Cal.Rptr. 66].) This is such a case. Intervention at this stage will probably avoid a lengthy and unnecessary proceeding to determine Grange's fault and appeal from any judgment against Grange. We order issuance of a writ of mandate.

■ In the proceedings in superior court, San Rafael stated on information and belief that discovery would show repairs were required with respect to Grange's work, causing a tolling of the statute of limitations for the period of repair. (*Cascade Gardens Homeowners Assn.* v. *McKellar & Associates* (1987) 194 Cal.App.3d 1252 [240 Cal.Rptr. 113].) In this court, San Rafael seems to have abandoned this justification for overruling the demurrer, perhaps because discovery has not confirmed San Rafael's belief. Nonetheless, in an abundance of caution, we will not foreclose San Rafael from seeking leave to amend the cross-complaint to assert facts causing such a tolling.

Let a writ of mandate issue directing the Marin County Superior Court to vacate its order overruling Grange's demurrer and to enter a new order sustaining the demurrer. Upon request, the court may exercise its discretion in determining whether to grant San Rafael leave to amend the cross-complaint.

Merrill, J., and Werdegar, J., concurred.