[Nos. B060492, B061959. Second Dist., Div. Four. Nov. 24, 1993.]

WILSHIRE WESTWOOD ASSOCIATES et al., Plaintiffs and Appellants,
v.
ATLANTIC RICHFIELD COMPANY et al., Defendants and Respondents.

**COUNSEL**

Nossaman, Guthner, Knox & Elliott, Thomas D. Long and Mary Lou Byrne for Plaintiffs and Appellants.

McClintock, Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Steven W. Weston, Steven J. Vining, Bren C. Conner, Sedgwick, Detert, Moran & Arnold, T. Emmet Thornton, Daniel P. Schrader and Tod Zuckerman for Defendants and Respondents.

## Opinion

EPSTEIN, J.—Wilshire Westwood Associates and Platt Development Corporation appeal from summary judgment entered against them in their action seeking damages from former lessees for the costs of abating soil contamination on a parcel of property. They assert error in the court's grant of summary adjudication of two issues: that operation of a gasoline service station is not an ultrahazardous activity giving rise to strict liability; and that no claim for private nuisance can be stated against a former occupant of property by a subsequent purchaser of the same property. They challenge the grant of summary judgment as to the remaining cause of action for negligence, asserting error in the court's holdings regarding lack of duty, implied assumption of the risk, and statute of limitations. Finally, they argue that the court erred in refusing to limit the attorney fees awarded to respondent Peter Ruddock to those fees attributable to the contract claims.

We conclude that the undisputed facts establish that the causes of action for negligence and strict liability are barred by the statute of limitations, and affirm the judgment on those causes of action. For this reason, we need not reach the questions of ultrahazardous activity, lack of duty and implied assumption of the risk. We find that appellants stated a cause of action for continuing nuisance, and that the statute of limitations does not bar that cause of action. We also conclude that the nuisance statutes are broad enough to include an action by a subsequent purchaser of property against former occupiers of the same property, and reverse the judgment as to the nuisance cause of action. We find no abuse of discretion in the court's refusal to apportion attorney fees, since the tort and contract claims presented the same issues.

### Factual and Procedural Summary

John and Thomas Crawford were owners of a parcel of property at the southeast corner of Wilshire and Midvale, in the Westwood Village section of Los Angeles. From 1964 to December of 1983, the Crawfords leased this property to Atlantic Richfield Company (ARCO) for operation of an ARCO gasoline service station. ARCO operated the station in conjunction with Peter J. Ruddock, its sublessee. When ARCO's lease expired in December 1983, Ruddock entered into a month-to-month lease with the Crawfords and continued to operate the station as an ARCO franchisee.

In November 1982, the Crawfords entered into an agreement to sell the property to Wilshire Westwood Associates and Platt Development Corporation (collectively Wilshire Westwood). Wilshire Westwood intended to construct a high-rise office building on the property. One of the express

conditions in the purchase agreement was that Wilshire Westwood inspect and approve, within 60 days, "the physical condition of the Property, including but not limited to the buildings and structures thereon, the soil, engineering, compaction and geological conditions thereunder, . . ."

Wilshire Westwood engaged a soils consultant, LeRoy Crandall & Associates, to inspect the property. Crandall's initial investigation relied upon soil borings performed in 1979 along the border between the subject property and the adjoining property. Although one of those soil borings revealed gasoline odors, Crandall's April 11, 1983, report to Wilshire Westwood did not mention the gasoline odors and did not include the 1979 boring logs. The letter report concluded that "no unusual difficulties from a soil standpoint would be expected in excavating at the site." On May 22, 1983, the purchase agreement was amended to reflect that Wilshire Westwood "has satisfied itself with regard to the Soils Contingency set forth in the Agreement." In that amendment, Wilshire Westwood expressly waived the soil contingency.

Wilshire Westwood took title to the property in August 1984. Ruddock's lease was assigned to Wilshire Westwood, and he continued to operate the service station until November 1984.

When excavation for construction of the high rise began on December 9, 1985, gasoline contamination was discovered in the soil. Wilshire Westwood had the contaminated soil removed, in accordance with directives of the California Department of Health Services. According to Wilshire Westwood, its out-of-pocket cost for the clean-up was $3 million. It also sustained financial harm from a related delay in completion of the building.

In October 1986, Wilshire Westwood filed suit against ARCO and Ruddock in United States District Court to recover its costs of cleanup pursuant to the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 United States Code sections 9601 and 9607(a)(2)(B). That action was dismissed based on the petroleum exclusion in 42 United States Code section 9601(14). (See *Wilshire Westwood Assoc.* v. *Atlantic Richfield* (9th Cir. 1989) 881 F.2d 801.)

Wilshire Westwood then filed this action in superior court, setting forth claims against ARCO and Ruddock for ultrahazardous activity, nuisance and negligence, and claims against Ruddock for breach of his lease. The Crawfords were named as defendants in this action, but they reached a settlement with Wilshire Westwood and were dismissed from the case. Wilshire Westwood's *separate action against Crandall for professional malpractice was* consolidated with this case, and later was settled and dismissed.

ARCO and Ruddock moved for summary adjudication of the issues of liability for ultrahazardous activity and nuisance. That motion was denied based on procedural grounds. The motion was modified and renewed. This time, the trial court granted summary adjudication as to Wilshire Westwood's causes of action for nuisance and strict liability.

ARCO then moved for summary judgment on the remaining claim against it for negligence. ARCO presented three theories, each of which, it claimed, was sufficient to warrant the relief it sought: that as a prior occupier of land, ARCO owed no duty of care to a subsequent purchaser; that Wilshire Westwood's claim was barred by the three-year statute of limitations; and that the claim was barred by express or implied assumption of the risk. The trial court granted summary judgment based on the first and second of these grounds.

Ruddock then moved for summary judgment on the negligence and breach of lease claims against him. The trial court granted summary judgment, and also awarded him approximately $175,000 in attorney fees pursuant to a provision in his lease agreement with Wilshire Westwood. Wilshire Westwood appeals from the judgments.

## DISCUSSION

### I

### Statute of Limitations

Respondents assert that the undisputed facts demonstrate that all of appellants' claims are barred by the statute of limitations. The parties agree that the statute of limitations for injury to real property is three years. (Code Civ. Proc., § 338, subd. (b).) The question presented is when that three-year period began to run.

In tort cases, the statute of limitations generally begins to run upon the occurrence of the last event essential to the cause of action, even if the plaintiff is unaware that a cause of action exists. (*Leaf* v. *City of San Mateo* (1980) 104 Cal.App.3d 398, 406 [163 Cal.Rptr. 711].) The infliction of actual and appreciable harm will commence the limitations period. (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].)

Where the harm at issue is a tortious injury to property, the injury is considered to be to the property itself, rather than to the property owner.

(*CAMSI IV* v. *Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1534-1535 [282 Cal.Rptr. 80].) "Thus once the sewer line has been improperly located on the property [citation], or the lot preparation and foundation construction have been improperly done [citation], or the encroaching buildings are constructed [citation], the tort is complete and the statute of limitations (unless forestalled by the 'discovery rule' or some other special doctrine) begins to run: An owner must bring its claim to court within the statutory period or the claim will be barred for that and all subsequent owners. Normally a subsequent owner will not be personally harmed by the tort until he or she becomes the owner, but no case has held that each new owner thus becomes entitled to a new statute of limitations against the tortfeasor. Such a rule would wholly disregard the repose function of statutes of limitations." (*Id.* at p. 1535, italics omitted.)

■ The discovery rule to which the *CAMSI IV* case refers assumes that all conditions for accrual of the action exist, but postpones commencement of the limitation period until the plaintiff discovers or should have discovered the facts essential to his cause of action. (*Leaf* v. *City of San Mateo*, *supra*, 104 Cal.App.3d 398, 406.) Under this rule, "[p]ossession of 'presumptive' as well as 'actual' knowledge will commence the running of the statute." (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101 [132 Cal.Rptr. 657, 553 P.2d 1129].) A plaintiff is charged with "presumptive" knowledge so as to commence the running of the statute once he or she has " 'notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation . . . .' " (*Ibid.*, italics omitted; see also *Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 896-897 [218 Cal.Rptr. 313, 705 P.2d 886].)

"Subjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." (*Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1150 [281 Cal.Rptr. 827].) ■ In this case, pursuant to their purchase agreement, appellants undertook an investigation of the condition of the soil as a prerequisite to their purchase of the property. The undisputed facts before the court demonstrate that a reasonably diligent inspection would have revealed the soil contamination which is the subject of this action.

In its motion for summary judgment, ARCO listed as undisputed the facts that "Plaintiffs have at all times contended in this lawsuit that the soil on the subject property was contaminated by gasoline before May, 1983" and "If

the soil contamination existed in May, 1983, a reasonable investigation of the property at that time would have revealed the presence of such contamination." Plaintiffs did not dispute the first fact; they did not dispute the second fact, either, and added that "Plaintiffs contend that LeRoy Crandell & Associates was aware or should have been aware of the existence of gasoline contamination in soil underlying the property prior to May, 1983." Based on these undisputed facts, respondents assert that appellants should have discovered the contamination in May 1983, and that the statute of limitations began to run at that time.

Appellants argue that the knowledge which should have been obtained by their soils engineer should not be imputed to them. The issue as framed is whether incorrect professional advice can affect the "constructive notice" element for commencement of the limitations period as to an underlying action against another individual. The problem was addressed by the Supreme Court in *Gutierrez* v. *Mofid, supra,* 39 Cal.3d 892. In that case, the plaintiff was a victim of medical malpractice. She consulted an attorney about a lawsuit against the physician, but was told that she had "no provable malpractice." Plaintiff later consulted another attorney, who filed a medical malpractice action for her. The Supreme Court held that the statute of limitations was not affected by the first attorney's discouraging advice, and hence that the medical malpractice action was untimely. "[F]or purposes of the statute of limitations, the risk that discouraging legal advice will lead to loss of a cause of action must fall upon the plaintiff who obtains that advice, rather than upon a wholly uninvolved defendant. In that situation, 'the right to be free of stale claims . . . comes to prevail over the right to prosecute them.' [Citation.]" (*Id.* at p. 900.) In a footnote, the court adhered to the traditional view that, where incorrect legal advice causes a plaintiff to delay filing an action until too late, the stale claim should be barred against the original tortfeasor, and the plaintiff's remedy is to proceed against the attorney whose bad advice caused the delay. (*Id.* at p. 900, fn. 2.)

This case presents a parallel situation. Appellants were on inquiry,[1] pursuant to their purchase agreement, as to the condition of the soil. They sought out and engaged professionals for advice about the soil condition. The advice they received should have, but did not, inform them of the gasoline contamination. Following *Gutierrez,* we conclude that the burden of this incorrect advice must fall on appellants, not on the wholly uninvolved respondents.

[1] An interesting question, which we need not reach in light of appellants' election to investigate the condition of the soil, is whether long-term use of the property as a gasoline service station was sufficient by itself to put appellants on inquiry about possible soil contamination.

To the extent appellants suffered injury from any inadequacy in the soils investigation, they were entitled to, and did, seek a remedy against the soils engineer. But appellants cannot assert that a reasonable investigation by their soils engineer would have revealed the contamination at the time of the soils report, and at the same time claim they did not have presumptive notice of the contamination.

Appellants rely on *Baright* v. *Willis* (1984) 151 Cal.App.3d 303 [198 Cal.Rptr. 510], which holds that ". . . a party who seeks professional advice regarding facts which might constitute malpractice is entitled to rely on the advice received." (*Id.* at p. 313; see also *Leaf* v. *City of San Mateo, supra,* 104 Cal.App.3d at p. 408.) In *Baright,* plaintiff suffered an injury and retained Attorney A to recover "all damages provided by law" (151 Cal.App.3d at p. 307) for the injuries he suffered in an accident at work. Attorney A filed a timely workers' compensation claim. Plaintiff asked him whether any action could be filed against nonemployer tortfeasors. Attorney A advised that no other lawsuit could be filed.

Plaintiff became dissatisfied with Attorney A and substituted Attorney B to represent him in the workers' compensation matter. Plaintiff put the same question to Attorney B and received the same answer: a lawsuit could not be successfully prosecuted against the nonemployer tortfeasors.

Plaintiff changed attorneys once again. His new counsel, Attorney C., advised plaintiff that a proper personal injury action could have been filed against nonemployer third parties, but that it was then barred by the statute of limitations. In plaintiff's subsequent malpractice action against Attorney A, the issue was whether the statute of limitations was tolled between the period when Attorney A's representation ended and when Attorney C advised him of his lost third party lawsuit.

The trial court sustained a demurrer based on the statute of limitations. The Court of Appeal reversed, holding that unless the complaint showed on its face that in the exercise of due diligence the plaintiff should have discovered Attorney A's negligence earlier and failed to do so, the issue of when plaintiff became aware of his legal right to have a third party lawsuit filed on his behalf was a question of fact. (151 Cal.App.3d at p. 311.)

It is important to note that *Baright* did not involve the tolling of the statute of limitations for a third party lawsuit; it only addressed the statute of limitations for legal malpractice. The court's conclusion that the statute was tolled as to the negligent attorney until the client discovered the legal malpractice is consistent with the conclusion in *Gutierrez* that where an

attorney causes a delay in filing an action, it is the attorney, not the " 'innocent' defendant," who should be charged with the consequences. (*Gutierrez* v. *Mofid, supra*, 39 Cal.3d at p. 900.) The same considerations are applicable to appellants' action against the soils engineer.

Appellants also rely on *Leaf* v. *City of San Mateo, supra*, 104 Cal.App.3d 398. That was an action by homeowners against a municipality for property damage. The homeowners were aware of damage to their property as early as 1972, but were unable to ascertain that the damage was caused by uncompacted sewer trenches on or near their property until the occurrence of a cave-in in 1976. The court rejected the city's argument that the cause of action accrued when the property damage was discovered. The court held that it accrued when plaintiffs learned or should have learned that the city's negligence caused the damage.

"The ultimate question therefore is whether plaintiffs exercised reasonable diligence in discovering the negligent cause of their injuries. [Citation.] We see no reason to commence the running of the statute of limitations when plaintiffs, at the outset, made reasonable, but unsuccessful, efforts to identify the negligent cause of the damage." (104 Cal.App.3d at p. 408.) For purposes of overcoming a demurrer on statute of limitations grounds, the court observed that "Where, as in this case, plaintiffs consulted with professional engineers as to the source of their injury, they were entitled to rely upon that advice." (*Ibid.*) The court further noted, however, that "Whether plaintiffs *in fact* exercised reasonable diligence in discovering the negligence of defendant City of San Mateo is a question of fact . . . ." (*Id.* at p. 409, italics added.)

The factual question in *Leaf* regarding diligent discovery is not present in our case. It is undisputed that through the exercise of reasonable diligence, any existing soil contamination could and should have been discovered by May 1983. Under the discovery rule, the statute of limitations would have commenced to run as of that time. Since the action was not filed until October 1986, more than three years after the commencement of the statute of limitations, it was not timely as to the cause of action for negligence.

Appellants' cause of action based on ultrahazardous activity is subject to the same three-year statute of limitations for injury to real property (Code Civ. Proc., § 338, subd. (b)), as moderated by the "discovery rule." (See *CAMSI IV* v. *Hunter Technology Corp., supra*, 230 Cal.App.3d 1525, 1533-1536.) The trial court did not dispose of this cause of action on statute of limitations grounds, having already granted summary adjudication based on

its determination that the operation of a gasoline service station with underground tanks in Los Angeles did not constitute an ultrahazardous activity. We need not address the correctness of that determination, since the undisputed facts which establish that the negligence claim is time barred apply as well to the cause of action for ultrahazardous activity.

■ We reach a different conclusion as to the cause of action for nuisance. ■ The commencement of the statute of limitations for a nuisance action varies, depending on whether the nuisance is characterized as permanent or continuing. ·

A permanent nuisance is generally of a type where a single occurrence causes permanent injury, and damages are assessed once and for all. (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868 [218 Cal.Rptr. 293, 705 P.2d 866].) If a nuisance is permanent, the plaintiff must bring one action for past, present and future damage within three years after the creation of the permanent nuisance. (*Id.* at p. 869.) An action for permanent nuisance would certainly be time-barred in this case.

But where the nuisance involves a use which may be discontinued at any time, it is characterized as a continuing nuisance, and persons harmed by it may bring successive actions for damages until the nuisance is abated. (39 Cal.3d at p. 869.) The crucial test of a continuing nuisance is whether the offensive condition can be discontinued or abated at any time. (*Capogeannis v. Superior Court* (1993) 12 Cal.App.4th 668, 677 [15 Cal.Rptr.2d 796]; *Mangini v. Aerojet-General Corp., supra,* 230 Cal.App.3d 1125, 1147.) "In case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing." (*Baker v. Burbank-Glendale-Pasadena Airport Authority, supra,* 39 Cal.3d at p. 870.)

In *Mangini v. Aerojet-General Corp., supra,* 230 Cal.App.3d at page 1148, the court held that plaintiffs whose land had been contaminated by toxic waste were entitled to amend their complaint to allege facts establishing that the nuisance was abatable and hence continuing. In *Capogeannis v. Superior Court, supra,* 12 Cal.App.4th 668, plaintiffs failed to specify whether their nuisance claim based on damages suffered when their land was contaminated by leakage from an underground fuel storage tank was based on a theory of continuing or permanent nuisance. Noting that it appeared from the record that the nuisance could be abated, the court held that the plaintiffs could proceed on a theory of continuing nuisance, since an action for permanent nuisance would be barred by the statute of limitations. (*Id.* at pp. 684-685.)

■ Appellants seek to recover for expenses incurred in abating the contamination. An annex to their complaint, a letter from the Department of

Health Services, states that post-cleanup testing from July 21, 1986, revealed that the cleanup of the gasoline spill had been adequate and complete, and that appellants could proceed with their construction project. This letter demonstrates that the nuisance was abatable, and for this reason can be characterized as a continuing nuisance which was deemed abated on or about July 21, 1986. Appellants' action, filed in October 1986, was well within three years of that abatement, and therefore timely under the statute of limitations for continuing nuisance.

II

*Nuisance Action Against Prior Possessor of Land*

The trial court granted summary adjudication as to appellants' fourth cause of action for nuisance, the only cause of action not barred by the statute of limitations. Appellants argue that this ruling is contrary to the rationale of *Mangini* v. *Aerojet-General Corp.*, *supra*, 230 Cal.App.3d 1125, a decision filed after the grant of summary adjudication. *Mangini* holds that a subsequent purchaser of land can maintain a cause of action for nuisance against a prior occupier of land. We agree with appellants.

The typical and familiar nuisance claim involves an activity or condition which causes damage or other interference with the enjoyment of adjoining or neighboring land. In this case, however, the nuisance complained of— contamination of the soil—was caused by the storage of gasoline on the same land on which the damage occurred. In fact, appellants purchased the land, with the nuisance, from respondents' landlord. These circumstances raise two questions of law: (1) Can a party maintain a nuisance action for an activity occurring on that party's own land?; and (2) Can a subsequent purchaser of land maintain a nuisance action against a prior occupier of that land? *Mangini* answers both questions in the affirmative.

The *Mangini* court began its analysis with reference to the California nuisance statutes, including Civil Code section 3479, which provides: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

The court also relied upon Code of Civil Procedure section 731, which provides in pertinent part: "An action may be brought by any person whose

property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as the same is defined [in Civil Code section 3479], and by the judgment in such action the nuisance may be enjoined or abated as well as damages recovered therefor."

As the court noted, those sections, and Civil Code sections 3480, 3481, 3493, are drafted broadly enough to encompass almost every conceivable interference with the enjoyment or use of land or property. (*Mangini* v. *Aerojet-General Corp.*, *supra*, 230 Cal.App.3d at pp. 1136-1137.) There is no indication in these statutes that the interference constituting the nuisance must originate on neighboring land.

The court reviewed California cases recognizing the breadth of the nuisance statutes, including *Stoiber* v. *Honeychuck* (1980) 101 Cal.App.3d 903 [162 Cal.Rptr. 194] a case in which tenants were permitted to proceed against their landlord on a nuisance theory. (*Mangini* v. *Aerojet-General Corp.*, *supra*, 230 Cal.App.3d at pp. 1136-1137; see also *Smith* v. *David* (1981) 120 Cal.App.3d 101 [176 Cal.Rptr. 112] [nuisance action by tenants against landlord].)

Finally, the *Mangini* court found that it was not material that the defendant had created the nuisance at some time in the past and did not currently have a possessory interest in the property. "[N]ot only is the party who maintains the nuisance liable but also the party or parties who create or assist in its creation are responsible for the ensuing damages." (*Shurpin* v. *Elmhirst* (1983) 148 Cal.App.3d 94, 101 [195 Cal.Rptr. 737]; *Mangini* v. *Aerojet-General Corp.*, *supra*, 230 Cal.App.3d at p. 1137; see also Civ. Code, § 3483 ["Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner, is liable therefor in the same manner as the one who first created it."].)

We find the *Mangini* opinion well reasoned, and fully applicable to our case. Appellants are entitled to pursue their nuisance claim against respondents as former lessees of the contaminated property.

### III

#### *Attorney Fees*

■ Appellants were ordered to pay attorney fees to respondent Ruddock in the amount of $175,000. This award was based on a lease provision that in any action commenced because of the failure of one party to perform under the lease, the prevailing party is entitled to costs and reasonable

attorney fees. Appellants claim error in the court's failure to separate that portion of Ruddock's costs and fees attributable to the breach of lease claims from the portion of the costs attributable to the noncontractual claims.

"Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 129-130 [158 Cal.Rptr. 1, 599 P.2d 83].) In this action, appellants alleged that Ruddock breached his lease by allowing contaminants to leak from the underground storage tanks and by failing to properly maintain, abandon and close the underground storage tanks. They sought recovery of the damages they incurred in investigating and remedying the contamination, and damages for the loss of use, decline in value, and delay in construction. These are the same claims and damages asserted in the other causes of action against Ruddock. The trial court did not abuse its discretion in refusing to apportion the recoverable fees.

### DISPOSITION

The judgment is reversed as to the nuisance cause of action; the judgment is affirmed in all other respects. Each party to bear its own costs on appeal.

Woods (A. M.), P. J., and Rappe, J.,* concurred.

A petition for a rehearing was denied December 22, 1993, and the petitions of both appellants and respondents for review by the Supreme Court were denied March 3, 1994. Mosk, J., Kennard, J., and Baxter, J., were of the opinion that the petitions should be granted.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.