[No. A065454. First Dist., Div. Three. Dec. 22, 1994.‡]

CHEVRON U.S.A. INC., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
DiSALVO TRUCKING CO., Real Party in Interest.

‡Review granted March 23, 1995. Review dismissed and opinion ordered published June 19, 1996.

## COUNSEL

Wong & Lee, Garrett L. Wong and Thomas C. Lee for Petitioner.

Hans W. Herb and Ethan A. Glaubiger as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Richard J. Idell, Sheryl Land and Wallace C. Doolittle for Real Party in Interest.

OPINION

CHIN, J.—We consider the statute of limitations in an action alleging diesel fuel pollution caused by defects in the installation of an underground storage tank. The issue is whether a property owner who might otherwise be entitled to indemnification for abating a "continuing nuisance" is barred by the statute of limitations applicable to latent construction defects. Code of Civil Procedure section 337.15[1] imposes a 10-year limitation on actions involving injury to property caused by latent construction defects. (See *Grange Debris Box & Wrecking Co.* v. *Superior Court* (1993) 16 Cal.App.4th 1349, 1354-1357 [20 Cal.Rptr.2d 515] (hereafter *Grange*).) Case law provides, however, that an action alleging a continuing nuisance or trespass may be brought at any time before the nuisance or trespass has been discontinued or abated or within three years afterward. (See *Wilshire Westwood Associates* v. *Atlantic Richfield Co.* (1993) 20 Cal.App.4th 732, 744-745 [24 Cal.Rptr.2d 562] [hereafter *Wilshire Westwood*].) When an action alleging a continuing nuisance caused by a latent construction defect is filed beyond the 10-year period, one of these principles must yield. We conclude that the 10-year statute of limitations controls and that the action here is untimely.

At an undetermined time between November 1967 and June 1970, Standard Oil Company of California, predecessor to Chevron U.S.A. Inc. (Chevron), sold to DiSalvo Trucking Co. (DiSalvo) and installed on DiSalvo's property underground fuel storage tanks. Nineteen or more years later, when the tanks were removed in 1989, DiSalvo discovered contamination of the soil. At the direction of Alameda County, implementing California's Underground Storage Tank Local Oversight Program, DiSalvo spent several hundred thousand dollars partially removing the contaminants. In 1993, DiSalvo sued Chevron for reimbursement of money already spent and to be spent to complete the cleanup. DiSalvo alleged causes of action for negligence, breach of contract, continuing nuisance, continuing trespass, and indemnity.

Chevron raised as a defense the statute of limitations for latent construction defects (§ 337.15) and sought summary judgment. After a hearing, the court denied the motion. The court ruled Chevron's proposed statute of limitations inapplicable and found triable issues concerning the running of the statute of limitations for a continuing nuisance. This petition followed.

*Latent Construction Defects Statute of Limitations*

Section 337.15, subdivision (a), states the statute of limitations for latent construction defects: "No action may be brought to recover damages from

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency."

DiSalvo's action alleges both injury to real property caused by Chevron's faulty installation of the fuel storage tanks and recent discovery of the negligent construction. By its terms, section 337.15, subdivision (a), would seem to govern. DiSalvo contends, however, that the indemnity cross-complaint exception in subdivision (c) of section 337.15 applies. That subdivision provides: "As used in this section, 'action' includes an action for indemnity brought against a person arising out of that person's performance or furnishing of services or materials referred to in this section, except that a cross-complaint for indemnity may be filed pursuant to subdivision (b) of Section 428.10 [which authorizes transactionally related cross-complaints] *in an action which has been brought within the time period set forth in subdivision (a) of this section.*" (Italics added.)

Under DiSalvo's reading of section 337.15, subdivision (c), Alameda County's administrative proceedings constitute the "action," and DiSalvo's complaint against Chevron is the indemnity "cross-complaint." DiSalvo asserts the administrative proceedings were timely; therefore, its action against Chevron is not barred.

■ Assuming, for purposes of analysis, that we could accept the characterization of the administrative proceedings as the "action" and DiSalvo's complaint as a "cross-complaint," we would still reject DiSalvo's contention. As we explained in *Grange*, for subdivision (c) of section 337.15 to apply, it is not sufficient that the original plaintiff by some means satisfies or eludes the statute of limitations in its action against the cross-complainant. The underlying action must be filed within 10 years of completion of construction. (*Grange, supra,* 16 Cal.App.4th at pp. 1355-1357.) Alameda County's administrative proceedings were not commenced within 10 years after completion of the construction; the contamination was not discovered until 1989, when the tanks were removed.

DiSalvo devotes most of its argument to the contention that section 337.15 does not apply when a complaint alleges a continuing nuisance. We turn now to that issue.

### Continuing Nuisance Statute of Limitations

Civil Code section 3490 provides: "No lapse of time can legalize a public nuisance, amounting to an actual obstruction of public right." ■ This has been "construed to mean that the statute of limitations is no defense to an action brought by a public entity to abate a public nuisance. [Citations.] However, where *private citizens* have sued for *damages for special injury* based on public nuisance, our Supreme Court has characterized the nuisance as either 'continuing' or 'permanent' and has used the characterization to determine whether the suit is subject to the statute of limitations. . . . [W]here a private citizen sues for damage from a permanent nuisance, the statute of limitations begins to run upon creation of the nuisance. Where a continuing nuisance is alleged, every continuation of the nuisance gives rise to a separate claim for damages caused by the nuisance." (*Mangini* v. *Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1142-1143 [281 Cal.Rptr. 827] (hereafter *Mangini*), original italics.)

"[W]here the nuisance involves a use which may be discontinued at any time, it is characterized as a continuing nuisance, and persons harmed by it may bring successive actions for damages until the nuisance is abated. [Citation.] The crucial test of a continuing nuisance is whether the offensive condition can be discontinued or abated at any time. [Citations.] 'In case of doubt as to the permanency of the injury the plaintiff may elect whether to treat a particular nuisance as permanent or continuing.' [Citation.]" (*Wilshire Westwood, supra,* 20 Cal.App.4th at p. 744.)

■ The same principles apply to continuing trespass. (*Mangini, supra,* 230 Cal.App.3d at p. 1148.)

Recent decisions have confirmed an owner's right to sue over a nuisance on the owner's own land and a subsequent owner's right to sue a prior possessor of property for creating the continuing nuisance. (*Wilshire Westwood, supra,* 20 Cal.App.4th at pp. 745-746; *Mangini, supra,* 230 Cal.App.3d at pp. 1134-1137; accord, *KFC Western, Inc.* v. *Meghrig* (1994) 23 Cal.App.4th 1167, 1178-1179 [28 Cal.Rptr.2d 676] (hereafter *KFC*); *Newhall Land & Farming Co.* v. *Superior Court* (1993) 19 Cal.App.4th 334, 342-345 [23 Cal.Rptr.2d 377] (hereafter *Newhall*).)

### Conflicting Principles

None of the recent decisions considering continuing nuisance principles has addressed the potential conflict between the statute of limitations for a continuing nuisance and the statute of limitations for latent construction

defects. Neither *Mangini*, which involved allegations of burning, burying, and otherwise discharging toxic wastes upon the property (*Mangini, supra,* 230 Cal.App.3d at p. 1132) nor *Newhall*, which alleged contamination of soil and groundwater during operation of a natural gas processing plant (*Newhall, supra,* 19 Cal.App.4th at p. 339) was a construction defect case. Three other cases (*KFC, supra,* 23 Cal.App.4th at p. 1171; *Wilshire Westwood, supra,* 20 Cal.App.4th at pp. 737-738; *Capogeannis* v. *Superior Court* (1993) 12 Cal.App.4th 668, 672 [15 Cal.Rptr.2d 796] (hereafter *Capogeannis*)) were similar to this matter in that they involved abandoned gasoline service stations and may have involved leakage from underground storage tanks. However, none of these decisions mentioned section 337.15 or discussed its potential for barring recovery.[2]

### Contentions of the Parties

Relying primarily upon *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624 [147 Cal.Rptr. 486, 581 P.2d 197] (hereafter *Regents*), and *Grange, supra,* 16 Cal.App.4th 1349, Chevron contends that section 337.15 is more specific to latent construction defect cases and therefore prevails over section 338, the statute of limitations applied to nuisances. Chevron asserts that the superior court's interpretation undermines the protection provided by section 337.15, which was enacted to shield contractors from "uncertain liability extending indefinitely into the future . . . ." (*Regents, supra,* 21 Cal.3d at p. 633, fn. 2.)

DiSalvo suggests that section 337.15 applies only to the original wrong and that continuing nuisance principles override the 10-year limitation. *Wilshire Westwood, supra,* 20 Cal.App.4th at pages 739-745, and a long line of prior decisions demonstrate that an action based on a continuing nuisance may be brought after expiration of the statute of limitations for the original wrong. DiSalvo contends the rules stated by those decisions apply to "all attempts to apply *any* statute of limitations to such actions." DiSalvo invokes public policy considerations, which it says require the cost of cleaning up hazardous waste to be borne by the company responsible for the damage. DiSalvo asserts that the legislative history for section 337.15 reveals no legislative intent to limit liability for pollution or for continuing nuisance or trespass.

### Analysis

Closer analysis of *Wilshire Westwood* and *Grange* is required. *Grange, supra,* 16 Cal.App.4th 1349, demonstrates how section 337.15 operates

---

[2]If raised as a defense, section 337.15 would bar recovery if the defendants were involved in development, were charged with latent construction defects causing injury, and were not in possession as owners, tenants, or otherwise at the time the deficiencies constituted the proximate cause supporting the action. (See *Grange, supra,* 16 Cal.App.4th at pp. 1353-1355.)

when continuing nuisance and continuing trespass issues are not raised. In *Grange*, plaintiff's office building was constructed on a site previously occupied by a gasoline service station. Plaintiff sued oil companies for contaminating the property. The oil companies cross-complained against the City of San Rafael, developer of the site. San Rafael cross-complained against Grange Debris Box and Wrecking Co., Inc. (Grange), for contaminating the site while preparing it for construction. Grange, whose work was completed more than 11 years before the original complaint, asserted section 337.15 as a bar to the cross-complaint. (*Grange, supra*, 16 Cal.App.4th at pp. 1352-1353.) We held the action against Grange barred by section 337.15, although subdivision (e)[3] of that section prevented San Rafael, possessor of the property when the alleged contamination took place, from asserting the 10-year statute of limitations. (*Grange, supra*, 16 Cal.App.4th at pp. 1354-1355.)

In *Wilshire Westwood*, the court considered nuisance principles but not latent construction defect issues. Plaintiffs purchased a gasoline service station parcel in 1982, intending to build an office building. Their soils consultant negligently advised them they would have no difficulty excavating the site. However, in 1985 when construction began plaintiffs discovered gasoline contamination; the state required its removal at a cost of $3 million. Plaintiffs sued the former service station operators and the soils consultant for reimbursement, alleging various theories, including nuisance. After plaintiffs settled with the soils consultant, the former service station operators obtained summary judgment, based in part on the statute of limitations. (*Wilshire Westwood, supra*, 20 Cal.App.4th at pp. 737-739.) Plaintiffs' appeal asserted continuing nuisance as an exception to the running of the statute of limitations.

*Wilshire Westwood* first concluded that the three-year statute of limitations for injury to real property based on theories of negligence and ultrahazardous activity (§ 338, subd. (b)) commenced at the time of purchase, when plaintiffs engaged professionals for advice about soil conditions. The statute for those causes of action expired before plaintiffs filed their action. (*Wilshire Westwood, supra*, 20 Cal.App.4th at pp. 741-744.) The court reached a different conclusion on the cause of action for nuisance. Plaintiffs had already abated the damage. The action, filed within three years of abatement, was timely under the statute of limitations for a continuing nuisance. (*Id.*, at pp. 744-745.)

---

[3]Section 337.15, subdivision (e), provides: "The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action."

Although *Wilshire Westwood* did not identify the section of the statute of limitations it applied to the continuing nuisance cause of action, it relied upon decisions that show section 338, subdivision (b), controls such actions. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 868 [218 Cal.Rptr. 293, 705 P.2d 866]; *Capogeannis, supra,* 12 Cal.App.4th at p. 672; *Mangini, supra,* 230 Cal.App.3d at pp. 1142-1148.)

Section 338 requires commencement "[w]ithin three years" for "(b) An action for trespass upon or injury to real property." The "continuing nuisance" or "continuing trespass" theory states that the injury caused by an abatable nuisance or trespass takes place at every continuation of the nuisance or trespass, each of which gives rise to a separate claim for damages. (*Mangini, supra,* 230 Cal.App.3d at pp. 1143, 1148.)

Explanations of the theory have not disclosed what happens when the nuisance or trespass is caused by a latent construction defect. Our task is to reconcile a statute providing a fixed starting point and a 10-year outer limit for actions alleging latent construction defects with a statute applying the shorter 3-year limit, but permitting the period to begin at any time after the defect causes injury to real property and before the injury has been abated.

The continuing nuisance or trespass theory allows for deferral of the starting date of the statute of limitations in much the same way as does the discovery rule. ■ Neither theory or rule may override the statute of repose created by the Legislature's fixed starting point and outer limit for latent construction defects. We apply the same two-step process used in other real property construction defect cases.

"In *Regents* . . . , *supra,* 21 Cal.3d 624, the Supreme Court held section 337.15 is an 'ordinary, procedural statute of limitations' enacted by the Legislature to 'require suit be filed within the shorter of two periods, one measured from the date of discovery and a second, longer period *measured from the event giving rise to the cause of action.* [Fn. omitted.] Section 337.15, read together with . . . sections 337 and 338, enacts such a two-step limitation: actions *founded upon a latent defect in the development of real property* must be filed within three or four years of discovery . . . *but in any case within ten years of the date of substantial completion of the improvement.*' (*Id.* at pp. 640-641, italics added.) In other words, the event which triggers the 10-year period is the date of substantial completion of the improvement." (*Schwetz* v. *Minnerly* (1990) 220 Cal.App.3d 296, 303 [269 Cal.Rptr. 417]; accord, *North Coast Business Park* v. *Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 27 [21 Cal.Rptr.2d 104].)

Similarly, when the complaint alleges a latent construction defect leading to a continuing nuisance (or trespass), the first step is to determine whether

the action is timely under continuing nuisance (or trespass) principles. Has it been filed before abatement of the nuisance (or trespass) or within three years after abatement? If so, the second step is to determine whether the action has been filed within ten years of the date of substantial completion of the improvement.

In other circumstances, courts have held section 337.15 applicable to actions involving latent construction defects but alleging other causes of action, such as breach of contract (*Moseley* v. *Abrams* (1985) 170 Cal.App.3d 355, 360-364 [216 Cal.Rptr. 40] (hereafter *Moseley*)) and products liability (*Stoneson Development Corp.* v. *Superior Court* (1987) 197 Cal.App.3d 178, 180-181 [242 Cal.Rptr. 721]). As explained in *Moseley*, "Nothing in the language of the section itself suggests that contract actions are exempt from its scope. . . . [T]he section provides in essence that no action, except one based on willful misconduct or fraudulent concealment, may be brought beyond the 10-year limitation to recover damages for any latent deficiency or any resulting injury to real or personal property. That working definition fits contract as well as tort actions . . . ." (*Moseley*, *supra*, 170 Cal.App.3d at p. 362.)

Not only is applying section 337.15 to continuing nuisance and continuing trespass causes of action consistent with the broad terms "no action" in section 337.15, subdivision (a), but it also furthers the Legislature's goal of setting an outside limit to protect contractors from extended liability. (*Sevilla* v. *Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611 [161 Cal.Rptr. 700].)[4]

DiSalvo's assertions of unfairness and violation of public policy favoring accountability for pollution warrant consideration, however. They point to inequities in the statute of limitations and to potential unfairness in its application. The result in *Grange* demonstrates the same unfairness DiSalvo finds here. The party that may have caused the contamination was exempted by the statute of limitations, while a more innocent possessor of the property at the time of contamination (San Rafael in *Grange*, DiSalvo here) might be held accountable for cleanup costs.

Any such unfairness is prescribed by section 337.15, which distinguishes between a defendant in possession or control when "any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action" (§ 337.15, subd. (e)) and a defendant out of possession and

---

[4]DiSalvo's proffered legislative history, of which we take judicial notice, does not undercut our conclusion. The Legislature's failure specifically to address the problem of pollution caused by construction did not engraft a pollution exception upon the broad terms of section 337.15.

control. Only the latter may assert section 337.15 as a bar to actions based on latent construction defects.

The distinction between possessors and contractors not in possession has been justified in the following ways: " 'First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable . . . . Second, a builder may be liable for construction defects under various legal theories—contract, warranty, negligence, and perhaps strict liability in tort. Landowner liability for such defects, on the other hand, typically lies only in tort, unless the landowner is a lessor, in which case he is liable only for events occurring while the tenant is in possession . . . . Third, landowners can ordinarily avoid liability by taking adequate care of their land and structures . . . . The builder has no such control over his product after relinquishing it to the landowner . . . . For any of these reasons the Legislature might rationally conclude that builders should remain liable for their mistakes for only 12 years after they complete construction, but that a landowner should remain liable for injuries caused on his land for as long as he is in possession.' [Citations.]" (*Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171, 182-183 [183 Cal.Rptr. 881] (hereafter *Barnhouse*), quoting *Freezer Storage, Inc.* v. *Armstrong Cork Co.* (1978) 476 Pa. 270 [382 A.2d 715, 718-719].) This distinction has withstood equal protection attack. (*Barnhouse, supra,* 133 Cal.App.3d at pp. 181-183; *Eden* v. *Van Tine* (1978) 83 Cal.App.3d 879, 886 [148 Cal.Rptr. 215, 12 A.L.R.4th 856].)

DiSalvo seeks, in effect, a pollution exception to the statute of limitations for latent construction defects. Such a request is better directed to the Legislature, architect of the intricate barrier formed by the statutes of limitations. We observe, however, that the public interest in cleaning up the environment is protected to some extent by Civil Code section 3490, which allows a public entity to sue at any time to abate a public nuisance, and by section 337.15, subdivision (e), which prevents a possessor or controller of property from asserting the 10-year statute.

DiSalvo's quarrel then is with being required to pay for abatement when Chevron's negligence may have caused the damage. DiSalvo's predicament highlights the importance to property owners and tenants of securing adequate insurance and of inspecting improvements to uncover construction defects before expiration of the 10-year statute. If defects are not located in time, owners or tenants may be held liable without recourse.

We conclude the superior court erred in rejecting Chevron's statute of limitations defense. Let a peremptory writ of mandate issue directing the Superior Court of the City and County of San Francisco to vacate its order

denying summary judgment and to enter a new order granting Chevron's motion.

White, P. J., and Corrigan, J., concurred.