[No. E036800. Fourth Dist., Div. Two. Aug. 4, 2005.]

INCO DEVELOPMENT CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF THE COUNTY OF SAN BERNARDINO,
Respondent;
DENNIS HAYNES et al., Real Parties in Interest.

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

**COUNSEL**

Wood, Smith, Henning & Berman, Daniel A. Berman, Lee M. Thunberg and Paul James Nolan for Petitioners.

No appearance for Respondent.

Silldorf, Shinnick & Ryan, Duane Edward Shinnick, Luke P. Ryan and Megan M. Chodzko for Real Parties in Interest.

**OPINION**

**WARD, J.**—Under the circumstances of this case we hold that the tolling provision contained in Code of Civil Procedure section 356[1] does not apply to extend the 10-year period set forth in section 337.15 within which plaintiffs can file actions based on latent construction defects. As a result we find that certain of the consolidated actions are time-barred so that the trial court was required to grant the summary judgment motion brought on that basis by defendants Inco Development Corporation and Inco Homes Corporation (Inco). We, therefore, grant Inco's petition for writ of mandate seeking review of that denial.

---

[1] All further statutory references will be to the Code of Civil Procedure unless otherwise indicated.

## FACTS AND PROCEDURAL HISTORY

This is a construction defect case. Inco developed and constructed each of the 216 homes in the Reunion subdivision in Adelanto that are the subject of this litigation.

Inco moved for summary judgment on the ground that the 10-year statute of limitations under section 337.15[2] for latent defects barred action as to 157 of the homes involved. As to these homes, completion certificates were recorded on or before May 16, 1993, commencing the period for filing action for latent construction defects.[3] The first of the lawsuits brought by 14 individual residents was filed May 16, 2003.

Inco had filed bankruptcy on October 15, 1999, and the bankruptcy action was dismissed and the stay lifted on May 24, 2001.

Plaintiffs filed an opposition in which they argued that the statute of limitations was tolled for the 19-month period from October 1999 through May 2001, during which the bankruptcy stay was in effect.

The trial court denied summary judgment on the ground that the 10-year limitations period is subject to the tolling provision of section 356.[4]

Inco seeks writ review, contending that section 337.15 is a statute of repose and is not subject to the tolling principles of section 356.

---

[2] Section 337.15 states in pertinent part: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency. [¶] . . . [¶] (d) Nothing in this section shall be construed as extending the period prescribed by the laws of this state for bringing any action. [¶] . . . [¶] (g) The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs: [¶] (1) The date of final inspection by the applicable public agency. [¶] (2) The date of recordation of a valid notice of completion. [¶] (3) The date of use or occupation of the improvement. [¶] (4) One year after termination or cessation of work on the improvement. [¶] The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement."

[3] Plaintiffs have disputed whether the completion certificates were valid; however, the trial court indicated that plaintiffs did not submit any evidence to dispute their validity.

[4] Section 356 states as follows: "When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action."

## ANALYSIS

### I. *Background—The Normal Effect of a Bankruptcy Stay is to Toll Statutes of Limitation*

█ The filing of a bankruptcy petition operates as an automatic stay of the commencement or continuation of a judicial proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy proceeding. (11 U.S.C. § 362(a)(1).)

A bankruptcy stay has been held to be a "statutory prohibition" within the meaning of section 356, so that the period of time of the automatic stay is not counted as part of the limitations time. (*Schumacher v. Worcester* (1997) 55 Cal.App.4th 376, 380 [64 Cal.Rptr.2d 1] (*Schumacher*); *Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 376 [8 Cal.Rptr.3d 907].)

Under normal circumstances, the effect of the bankruptcy stay here would seem to be clear cut: the statute of limitations is extended 19 months. (See *Schumacher*, *supra*, 55 Cal.App.4th at p. 381.) However, Inco argues that the tolling provision of section 356 is not applicable because we are dealing with a special statute of repose, section 337.15.

### II. *Section 337.15 is a Special Statute of Repose*

█ Inco principally relies on the Supreme Court's decision in *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363 [2 Cal.Rptr.3d 655, 73 P.3d 517] (*Lantzy*), where the court held that "section 337.15's 10-year statute of limitations for latent construction defects is not subject to a general rule of equitable tolling while promises or attempts to repair are pending." (*Lantzy*, *supra*, 31 Cal.4th. at p. 367.)

The court expressly did not decide in *Lantzy* whether section 337.15 is subject to the several separate statutes that specify when certain limitations periods will be tolled, for example, "[sections] 351 [defendant's absence from state], 352 [plaintiff's minority or insanity], 352.1 [plaintiff's incarceration], 352.5 [pending restitution order against defendant], 354 [plaintiff's disability by virtue of state of war], *356 [injunction against commencement of action]*.)" (*Lantzy*, *supra*, 31 Cal.4th at p. 383, fn. 17, italics added.)

Inco contends that the statutory tolling provision contained in section 356 should not apply to extend section 337.15's limitations period for the same reasons that the Supreme Court found equitable tolling should not apply. In *Lantzy*, the court stated: "A broad tolling-for-repairs rule would contravene the Legislature's clear intent, at the time it adopted section 337.15, to ensure

a generous but firm cutoff date for latent-defect suits. Moreover, the extraordinary length of the limitations period set forth in section 337.15 weighs strongly against the need for such a tolling rule as a matter of fair procedure." (*Lantzy*, *supra*, 31 Cal.4th at p. 367.)

■ A statute of repose has nothing to do with the date of injury, but bars all suits after the expiration of a specified time from the manufacture or delivery of a product or a transaction. (See *Burroughs v. Precision Airmotive Corp.* (2000) 78 Cal.App.4th 681 [93 Cal.Rptr.2d 124] [manufacturer of plane]; *Miguel v. Country Funding Corp.* (9th Cir. 2002) 309 F.3d 1161 [consummation of loan transaction].) It does not cut off an existing right of action, but rather provides that nothing which happens thereafter can *be* a cause of action.

■ Section 337.15 does have characteristics of a statute of repose. It is not dependent upon traditional concepts of accrual of a claim, but is tied to an independent, objectively determined and verifiable event, i.e., the date of substantial completion of the improvement. That date may very well predate the time when a potential plaintiff purchases the property. A suit to recover for a construction defect generally is subject to limitations periods of three or four years, depending on whether the theory is breach of warranty (§ 337, subd. 1) or tortious injury to property (§ 338, subds. (b), (c)). Unlike these statutes of limitations which begin to run only when the defect was or should have reasonably been discovered, the 10-year period in section 337.15 imposes an "absolute requirement" that a lawsuit to recover damages for latent defects be brought within 10 years of substantial completion of the construction, whether or not the defect was or even could have been discovered within that period. (*Lantzy*, *supra*, 31 Cal.4th at p. 369.)

Although *Lantzy* did not expressly refer to section 337.15 as a statute of repose, two Courts of Appeal have done so. In *Chevron U.S.A. Inc. v. Superior Court* (1994) 44 Cal.App.4th 1009 [54 Cal.Rptr.2d 324], the Court of Appeal held that while an action alleging a continuing nuisance or trespass may be brought at any time before the nuisance or trespass has been abated or within the three-year limitations period of section 338, subdivision (b), the 10-year period of section 337.15 controlled. It stated that "[t]he continuing nuisance or trespass theory allows for deferral of the starting date of the statute of limitations in much the same way as does the discovery rule. Neither theory or rule may override the statute of repose created by the Legislature's fixed starting point and outer limit for latent construction defects. . . . [¶] . . . [¶] '[T]he event which triggers the 10-year period is the date of substantial completion of the improvement.' [Citations.]" (*Chevron U.S.A. Inc. v. Superior Court, supra*, 44 Cal.App.4th at p. 1017; see *Gaggero v. County of San Diego* (2004) 124 Cal.App.4th 609, 618 [21 Cal.Rptr.3d 388].)

Thus, we conclude that section 337.15 is a statute of repose. While this characterization is not necessarily dispositive of the issue whether section 337.15 is subject to tolling under section 356 because of a bankruptcy stay, it does serve to distinguish section 337.15 from garden variety limitations statutes that simply provide for various periods for the commencement of specified actions.

### III. *Statutory Tolling Under Section 356 Does Not Extend the 10-Year Statute*

We must now determine and effectuate legislative intent in order to decide the specific issue whether the tolling provisions of section 356 apply to extend the 10-year limit set forth in section 337.15. (*Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].)

It has been repeatedly stated in this regard that the enactment of section 337.15 reflected a legitimate concern that expanding concepts of liability could imperil the construction industry unless an appropriate limitations period was adopted. (*Lantzy*, *supra*, 31 Cal.4th at 374.) As explained in *Lantzy*, in choosing the lengthy 10-year period, the Legislature struck a balance between allowing a fair time to discover and sue upon latent construction defects and "protecting a vital industry from the damaging consequences of indefinite liability exposure. For latent deficiencies, the lawmakers rejected shorter periods in favor of a limit in the upper range of those previously adopted by other jurisdictions. Moreover, by placing exemptions in the latent defect statute for personal injury, willful misconduct, and fraudulent concealment, the legislators demonstrated an intent to pick and choose the particular exceptions they wished to allow and those particular aspects of the prior case law they wished to embrace. The implication arises that except as stated, and for important policy reasons, the Legislature meant the generous 10-year period set forth in section 337.15 to be firm and final." (*Lantzy*, *supra*, 31 Cal.4th at p. 377.)

*Lantzy* observed that, "the plain language of section 337.15 suggests that the 10-year limitations period is not subject to extension for reasons not stated in the statute itself." It declares "in stentorian terms, that '[n]o action *[for latent construction defects] may be brought . . . more than 10 years after the substantial completion* of a development or improvement.'" (*Lantzy*, *supra*, 31 Cal.4th at p. 373, second italics added.) The Supreme Court also found it significant that, although legislators were well aware of case law that had engrafted a "tolling for repairs" rule onto the four-year discovery-based limitations period for breach of construction warranty, they did not provide for an extension for repairs in either section 337.15 or 337.1. "On the contrary, the Legislature specified in section 337.15 that *whatever limitations*

*periods might otherwise apply*, 'no action' for injury to property arising from latent construction defect 'may be brought' more that 10 years after substantial completion of the project. [Citations.] The inference arises that regardless of whatever *tolling rules* might otherwise apply *within* the 10-year period, the Legislature intended no such extension of the 'absolute' [citation] 10-year limit itself." (*Lantzy, supra,* 31 Cal.4th at pp. 377–378.)

■  These same considerations apply in the present situation and persuade us that the Legislature did not intend that the 10-year limit would be extended for any time wholly within that period during which a contractor is in bankruptcy. The Legislature must have been aware that contractors and other professionals involved in the construction industry are subject to financial vicissitudes, including bankruptcy; and the provision of such a lengthy period allows a potential plaintiff ample time to discover construction defects and bring suit despite such circumstances. We must emphasize we are dealing with a situation where the bankruptcy stay lasted for 19 months and was lifted well before the expiration of the 10-year period. An extension at the end of the limitations period is unnecessary to protect the plaintiff's rights. (See *Lantzy, supra,* 31 Cal.4th at p. 379.) As we will discuss *post,* under federal bankruptcy law this result would not be the same if the defendant had been in bankruptcy for the entire 10 years or was in bankruptcy at the end of the 10-year period. We also note that there is no suggestion that the bankruptcy filing by Inco was a bad faith attempt to thwart plaintiffs' lawsuits.

Our conclusion that section 356 does not apply to extend the 10-year limit of section 337.15 as a result of bankruptcy stays occurring within that period is also supported by the rule of statutory construction that a later, more specific statute controls over an earlier, general statute. Section 337.15 was enacted in 1971 as a result of concerns about the damaging consequences of indefinite liability exposure on the construction industry whereas section 356 was enacted in 1872 and applies to tolling and to statutory prohibitions in general. (*Woods v. Young, supra,* 53 Cal.3d at pp. 324–325.)

■  Allowing an extension of the 10-year period for a developer or contractor's bankruptcy within that period would also undermine the statutory purpose of having a firm cutoff date for construction defect lawsuits because of the effect on indemnity cross-complaints. Subdivision (c) of section 337.15 states that a transactionally related cross-complaint for indemnity may be filed outside the 10-year limit if the main action has been brought within the 10-year period. However, if the 10-year period were tolled, an unsuspecting subcontractor could be sued for indemnity long after the statute's limitations period had passed, simply because the indemnitee (the subsequent cross-complainant) was subject to suit. *Lantzy* bewailed the fact that these unsuspecting subcontractors would still be under an indefinite threat of suit and

might be forced to maintain expensive insurance coverage to meet their potential liability for alleged defects in projects completed many years in the past. (*Lantzy*, *supra*, 31 Cal.4th at p. 378.)

Unacceptable consequences would also result if the 10-year period could be extended for the purpose of filing a complaint, but not for purposes of filing an indemnity cross-complaint. (See *Chevron U.S.A. Inc. v. Superior Court*, *supra*, 44 Cal.App.4th at p. 1013 [stating that for "subdivision (c) of section 337.15 to apply, it is not sufficient that the original plaintiff by some means satisfies or eludes the statute of limitations in its action against the cross-complainant"].) In such a situation a contractor might have to answer for a defect simply because he had the misfortune of having been bankrupt at some time during the 10-year period, but he would be unable to seek indemnity from a subcontractor who is most responsible for that defect. Such a result could not have been intended by the Legislature.

IV. *Bankruptcy Stay Provisions Do Not Extend or Toll the 10-Year Statute*

Finally, we find that federal bankruptcy law does not compel a different result. Title 11 United States Code section 108(c) provides in pertinent part: "[I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—[¶] (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or [¶] (2) 30 days after notice of the termination or expiration of the stay under [title 11 United States Code] section 362 [automatic stay] . . . ."

However, the existence of an automatic stay under 11 United States Code section 362 does not trigger the suspension referred to in 11 United States Code section 108(c). (*ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 118 Cal.App.4th 1031, 1038 [13 Cal.Rptr.3d 580].) This provision does not provide for tolling of any externally imposed time bars. It only provides for extending the applicable time deadlines for 30 days after notice of the termination of the 11 United States Code section 362 stay. "The reference in § 108(c)(1) to 'suspension' of time limits clearly does not operate in itself to stop the running of a statute of limitations; rather, this language merely incorporates suspensions of deadlines that are expressly provided in *other* federal or state statutes." (*Aslanidis v. U.S. Lines, Inc.* (2nd Cir. 1993) 7 F.3d 1067, 1073.)

In *Simon v. Navon* (1st Cir. 1997) 116 F.3d 1, the court noted that defendant "has assumed that the mere existence of an automatic stay under

§ 362 triggers the 'suspension' referred to in § 108(c). This may be a common sense reading, but it is not the law. *Collier Bankruptcy Manual* sets forth the vital caveat to 'such suspension': [¶] 'Such a suspension may result from either state or federal law. . . . [¶] . . . In some jurisdictions state law may dictate suspension of a statute of limitations when a bankruptcy or another court proceeding has stayed the initiation of an action. Such suspension would presumably be included within the terms of section 108(c), adding the entire duration of the automatic stay to the applicable time period. [Footnote omitted.] [¶] However, absent such a provision in state law, a statute of limitations or other deadline for an action against a debtor . . . is extended for only the second period set forth in section 108(c), 30 days after notice of the termination or expiration of the automatic stay . . . . [¶] Lawrence P. King, ed., 1 *Collier Bankruptcy Manual*, ¶ 108.04 at 108-14, 15 (3d ed. 1996)." (*Id.* at p. 4.)

In conclusion, federal bankruptcy law does not compel us to extend the 10-year period in section 337.15 for the 19 months petitioners were in bankruptcy. Contrast this to a situation where the defendant's bankruptcy was pending at the expiration of the 10-year period. In such a case, the period would be extended 30 days after the termination of the bankruptcy stay. (Cf. *In re Spirtos* (9th Cir. 2000) 221 F.3d 1079 [finding 11 U.S.C. § 108(c) applied to keep alive a California state judgment beyond the 10-year period provided by section 683.020 for renewing a judgment—what the court referred to as a statute of duration]; *Kertesz v. Ostrovsky, supra,* 115 Cal.App.4th at p. 377.)

Citing *Schumacher, supra,* 55 Cal.App.4th 376, plaintiffs assert that since they never received any notice of the termination of the bankruptcy, the 30-day period to bring their actions never commenced and, thus under 11 United States Code section 108(c) all the actions are timely. Plaintiffs have misread the statutory requirements. The bankruptcy stay automatically expired when the bankruptcy court dismissed the action. (11 U.S.C. § 362(c)(2).) The bankruptcy court's order was entered on May 24, 2001, and the clerk mailed notice of the entry that same day. A claimant would have 30 days from that date to file suit. Unlike the situation in *Schumacher,* there was no indication that plaintiffs had a claim or possible claim against the bankrupt at that time, and, thus, there was no requirement that they be given notice of the bankruptcy court's order.

It would lead to absurd results to hold otherwise. As in this case, the bankruptcy proceeding was concluded years before the plaintiffs filed their actions and at a time when their claims were unknown and unforeseeable by Inco. To hold in effect that the suspension of the limitations period continued as to these plaintiffs, merely because they were not given notice of termination would be a result serving no rational purpose.

We are also confident that such a result is contrary to the accepted application of bankruptcy law. In *Husmann v. Trans World Airlines, Inc.* (8th Cir. 1999) 169 F.3d 1151, for example, Husmann was injured on October 5, 1991, when he tripped over luggage while boarding a Trans World Airlines (T.W.A.) flight from London, England to St. Louis, Missouri. T.W.A. had filed a petition in voluntary bankruptcy on January 31, 1992. The automatic stay was terminated by the bankruptcy court on April 6, 1995. In April 1997, Husmann sued T.W.A. in Missouri state court. Although the case primarily hinged on the application of the Warsaw Convention, the Court of Appeal also found that Husmann's suit was barred even if the five-year statute of limitations period of Missouri law applied. "Husmann relies on the automatic stay provision of section 362 to come within the five-year period. The Bankruptcy Code does not provide that a statute of limitations is tolled during the period of bankruptcy. It provides that the action must be commenced within thirty days after notice of the termination or expiration of the stay. *See* 11 U.S.C. § 108(c)(2). In this case, the bankruptcy court terminated the stay on April 6, 1995. Husmann did not file suit until April 21, 1997, well beyond the thirty-day window. T.W.A.'s second bankruptcy filing on June 30, 1995, makes no difference. Husmann had thirty days from April 6, 1995, and so he was already out of time by June 30, 1995." (*Id.* at pp. 1153–1154.) It would seem to be a safe assumption that T.W.A. had not given Husmann notice of the termination of the bankruptcy stay in April 1995.

V. *Summary*

For the foregoing reasons, we conclude that the tolling provision of 356 does not apply in the circumstances of this case to extend the 10-year period of repose, and more particularly that it did not apply on account of the automatic stay imposed during the defendant's bankruptcy. The bankruptcy stay had been lifted well more than 30 days before the end of the 10-year period under section 337.15. Thus, we must conclude the trial court erred in denying Inco's motion for summary judgment.

DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of San Bernardino County to set aside its order denying Inco's motion for summary judgment and to enter a new and different order determining that the 10-year limitations period of section 337.15 bars the present action as to 157 homes and, therefore, granting the motion as to actions with respect to those homes. Each party to bear its own costs.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Richli, Acting P. J., and King, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied November 2, 2005. Kennard, J., was of the opinion that the petition should be granted.