[No. D052082. Fourth Dist., Div. One. Jan. 20, 2009.]

SAN DIEGO UNIFIED SCHOOL DISTRICT, Plaintiff and Appellant, v. COUNTY OF SAN DIEGO, Defendant and Respondent.

290

292

**COUNSEL**

Best, Best & Krieger, Cyndy Day-Wilson and Melissa W. Wood for Plaintiff and Appellant.

The Simpson Law Firm, Douglas J. Simpson, Brandon J. Vegter; John J. Sansone, County Counsel, N. Thomas Deak and James R. O'Day, Deputy County Counsel, for Defendant and Respondent.

OPINION

**HUFFMAN, J.**—Plaintiff and appellant, the San Diego Unified School District (the District), brought this action on numerous contractual and equitable theories against defendant and respondent the County of San Diego (the County), in the factual context of environmental problems and remediation costs incurred at District property, due to the ongoing effects of an inactive landfill that was operated in the 1960's by the County, which leased the District property. The District seeks reimbursement of a share of its expenses for remedial work at the landfill site that was required to be performed by several regulatory agencies, pursuant to environmental legislation enacted in the 1980's. (Wat. Code, § 13000 et seq., the Porter-Cologne Water Quality Control Act; Health & Saf. Code, § 41805.5 [regulating nonvehicular air pollution].)

The District appeals a summary judgment that was granted in favor of the County on the ground that all causes of action in the District's amended complaint (filed in 2004) are barred by the statute of limitations applicable to latent construction defects. (Code Civ. Proc.,[1] §§ 337.15, 437c.) The trial court reasoned that all the District's theories, including breach of contract, equitable indemnity, declaratory relief, nuisance, and so forth, were based on the underlying premise that the landfill is an improvement on the District's property, constructed by the County within the meaning of section 337.15, subdivision (a), and therefore any action seeking damages for latent defects in the property had to be brought against the County within 10 years of completion of the improvement, which occurred in 1967.

On appeal, the District contends the trial court erred in its application of section 337.15, because the District is not suing upon any claim for damages based on defective construction, design or operation of the landfill, but instead is seeking monetary reimbursement of costs incurred by the District, as a property owner, in achieving compliance with environmental regulations of groundwater and other substances affected on an ongoing basis by the closed landfill. The District points out that the County was designated by a regulatory agency, the San Diego Regional Water Quality Control Board (the Regional Board), as an "operator" of the landfill, but the County has refused to perform certain allocated tasks to remedy some of the environmental problems of the landfill (mainly groundwater monitoring).[2]

---

[1] All further statutory references are to the Code of Civil Procedure unless noted.

[2] Water Code section 13273.3 defines the term "operator" for purposes of Water Code section 13273 et seq. as "a person who operates or manages, or who has operated or managed, the solid waste disposal site. If the operator of the solid waste disposal site no longer exists, or is unable, as determined by the regional board, to comply with the requirements of Section

In response, the County argues that section 337.15 protects landfill improvers such as the County from "long-tail" defect liability, and that such protection should not be lost where a plaintiff, such as the District, is seeking repayment of modernization costs for a 40-year-old landfill, to meet current maintenance standards as now set forth in environmental regulation. (*Gaggero v. County of San Diego* (2004) 124 Cal.App.4th 609 [21 Cal.Rptr.3d 388] (*Gaggero*).)

Our review of the 12 causes of action of the operative complaint persuades us that the trial court erred as a matter of law in deciding that the latent construction defect limitations period, as set forth in section 337.15, was dispositive of all the District's contractual and indemnification theories. The District is relying on the language of the lease between the parties and their 1999 "sharing agreement," which they entered into for allocation of their expenses for environmental regulatory compliance, and the District seeks breach of contract damages. It also relies on claims of statutory duties that the County has violated, to its damage, and these theories are distinct from construction defect allegations.

Further, triable issues of fact remain on alternative grounds on which the County sought summary judgment, the different limitations bars of section 337, subdivision 1 and Government Code section 911.2. The trial court did not reach those issues, and it cannot now be determined as a matter of law whether the complaint was timely filed based on the relief sought, as "money or damages" within the purview of the Government Tort Claims Act (Gov. Code, § 810), or the contractual claims against the County (Gov. Code, §§ 905, 911.2).

We also conclude that other noncontractual causes of action by the District, such as nuisance and trespass, are not subject to the bar of section 337.15. The District pled sufficient grounds and supplied a sufficient factual showing to allow it to pursue proceedings on the merits on its requests for declaratory and other relief under theories of nuisance, trespass, or inverse condemnation, and summary judgment was improperly granted on limitations grounds. We reverse the judgment for further proceedings in accordance with the views expressed in this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background; Lease and Sharing Agreement

A subsidiary portion of this dispute was previously before this court in *San Diego Unified School Dist. v. San Diego Regional Water Quality Control Bd.*

13273, 13273.1, or 13273.2, '*operator*' *means any person who owns or who has owned the solid waste disposal site.*" (Italics added.)

(Sept. 18, 2006, D047432) (nonpub. opn.) (hereafter prior opinion), an appeal by the District of a demurrer ruling in favor of the Regional Board on the only cause of action pled against the Regional Board (i.e., declaratory relief regarding the manner in which the Regional Board carried out its regulatory functions). (Prior opn. [finding no error by the trial court in declining to entertain requests for declaratory relief regarding the rights and duties between the Regional Board and these parties].) We now adopt the relevant factual background as set forth in that prior opinion, although those issues did not deal directly with the rights of the District versus the County:

"The amended complaint generally alleges numerous disputes between the School District and the County about their respective responsibilities for remediation of environmental problems at the landfill site. These problems stemmed from a 1961 lease by the School District to the County, allowing the County to open a sanitary landfill on the subject property. The landfill remained in operation until 1967. In 1968, the School District constructed Bell Junior High School on the property.

"Pursuant to environmental legislation enacted in 1986, the Regional Board designated the County to be the operator of the landfill site, which was now inactive, and in 1987, required the County to prepare a 'solid waste air quality assessment test (SWAT).' (Health & Saf. Code, § 41805.5.) This was not done [at the time]. The Regional Board also required the County to conduct wastewater tests also entitled SWAT, 'solid wastewater quality assessment tests.'

"As further background here, we note that under section 13273, subdivision (a), the State Board, before January 1986, was required to rank all solid waste disposal sites, based upon the threats they posed to water quality. It then required the operators of such sites, including this one, to submit a SWAT to the appropriate regional board for its examination pursuant to [section 13273,] subdivision (d). Under that subdivision (d), the regional boards then examined the reports submitted and determined whether the test wells and soil testing had detected any hazardous waste conditions. The regional board could then order a monitoring program and take corrective action at the solid waste disposal site, regarding water safety, pursuant to Chapter 5 (commencing with § 13300).

"In 1999, the City of San Diego's Solid Waste Local Enforcement Agency (LEA), issued a notice of violation to both the County (operator) and the School District (owner) for the lack of monitoring or cleanup at the site. The School District and the County entered into a 'sharing agreement,' attached as an exhibit to the amended complaint, providing for their division of responsibilities for such tasks. Further requirements were imposed by the Regional

Board in 2000 on both the County and the School District. The School District carried out repairs and improvements at considerable expense. The County did so also, and allegedly caused further damage to the School District property.

"In 2004, the School District filed this action against the County, seeking damages of $1.4 million and injunctive relief."[3]

## B.  First Amended Complaint

The operative first amended complaint (amended complaint) was filed in May 2005 and pleads several sets of allegations. In the first three causes of action, the District is pursuing breach of contract theories under both the lease and the sharing agreement (attached as exhibits) to seek damages of $1.4 million for breach of contractual duties or quantum meruit recovery. The lease included a "hold harmless" clause as follows: "County, so far as it may lawfully do so, shall hold District harmless from any or all liability for injury to person or damage to property arising directly or indirectly from any act or omission of any employee or officer of County or any person occupying the demised premises under or pursuant to this agreement."

In the November 1999 sharing agreement, the parties agreed to a reservation of rights as follows: "The terms of this agreement are intended to facilitate responsible management of the property in accord with all environmental regulatory requirements. However, nothing in this agreement is intended to and shall not be construed to relieve either party from any legal duties or liabilities each may or may not have under state or federal law, or under any hold harmless or indemnification provisions contained in any lease or other written agreement between School District and County."

Although the District had filed a governmental tort claim against the County in 1999, requesting that the County take corrective action pursuant to a notice of violation of orders issued by the LEA (City of San Diego Solid Waste Local Enforcement Agency), the parties apparently did not pursue the claim, because they entered into the sharing agreement. Under that agreement, the County agreed to maintain and pay for the landfill gas control and monitoring system, while the District agreed to maintain the surface of the playground and "slopes and drainage structures on the property in accord

---

[3] See Health and Safety Code section 41805.5, subdivision (i)(3) (solid waste environmental legislation definitions): " 'Operator' means the person who operates or manages, or who has operated or managed, the solid waste disposal site. If the operator of the solid waste disposal site no longer exists, or is unable, as determined by the [agency], to comply with the requirements of this section, 'operator' means any person who owns or has owned the solid waste disposal site."

with directives from all environmental regulatory agencies," such as the LEA. They also agreed to split the facility fees and site security costs and obligations, such as fencing. However, the obligations to monitor and treat the groundwater at the site, which is affected by gas migration, remain in dispute in this action. In 2003, the County proposed an amendment to the sharing agreement that would have addressed that groundwater issue, but the District did not accept it, instead bringing another claim against the County and then this action.

In the contract claims, the District further alleges that both the Regional Board and the LEA have designated the County as an "operator" of the site, within the meaning of the environmental regulations, and the agencies have sought to impose duties upon the County to install groundwater monitoring wells and complete a SWAT (solid waste assessment test) investigation. (Wat. Code, § 13273; Health & Saf. Code, § 41805.5.) Although notices of violations were issued, the County has refused to perform these duties, causing the District to incur expenses, which it seeks to recover in several ways, in reliance on the lease or sharing agreement, or on its statutory obligations as a property owner in light of those contractual arrangements.

Next, in the fourth through sixth causes of action, theories of express and implied indemnity and contribution are pled, based on the 1961 lease agreement's "hold harmless" provision, and based on obligations allegedly owed by the County to the District under the sharing agreement, and based on its obligations to comply with environmental regulations. The District has incurred expenses and sought reimbursement, which has not been paid despite demands.

In the seventh through ninth causes of action, damages for nuisance, trespass, and inverse condemnation are sought for the County's alleged interference with the District's use and benefit of the site as a school and playground. The condition of the site required installation of monitoring wells and equipment for methane gas and other contamination of this site, which created problems at the school.

In the 10th, 11th, and 12th causes of action, injunctive and declaratory relief is sought to require the County to address its "past, present and future legal and contractual responsibilities with respect to the landfill." The requested orders include a declaration of the comparative liability between the County and the District, with regard to costs incurred for environmental cleanup, both past and future, due to enforcement of federal, state and local laws and regulations. The County is alleged to have failed and refused to comply with Regional Board order No. 97-11 and the 2000 addendum, concerning its obligations as an "operator" of the landfill, and to have

wrongfully declined to accept any legal or contractual responsibility for the costs of compliance with all applicable laws concerning the landfill site.

The District's request for declaratory relief will allegedly avoid a multiplicity of actions that would result if the District were required to defend the claims by governmental agencies, and then bring a separate action against the County for indemnification of sums that the District may be compelled to pay as a result of any enforcement action taken against it.[4]

### C.   Motion for Summary Judgment

In 2007, shortly before the scheduled trial date, the parties filed cross-motions for summary judgment or adjudication. The District filed a motion in April 2007 that sought only summary adjudication and declaratory relief that the County had the contractual duty to indemnify it under the lease and its "hold harmless" clause, for expenses the District had incurred to comply with environmental regulation.

Next, the County filed its own summary judgment or adjudication motion on several grounds, including the bar of the statute of limitations for latent construction defects. (§ 337.15 [providing in pertinent part that: "(a) No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property[ and/or] [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency."].)

In addition to contending that the 2004 filing of the action was untimely under section 337.15, because the landfill amounted to an "improvement" to real property, which had been completed in 1967, the County sought summary judgment based on several alternative arguments. First, it argued that the action was time-barred based on the contractual statute of limitations, section 337, subdivision 1, and the governmental claims requirements of Government Code section 911.2 (and/or Code Civ. Proc., § 338, subd. (j), due to 1993 knowledge by the District about slope erosion and settlement problems at the property, which the County refused to pay for in 1999). The County also

---

[4] In our prior opinion, we noted that the District did not seek relief from the State Water Resources Control Board for any failure of the Regional Board to obtain compliance from the County. (Wat. Code, § 13320.)

contended it had governmental immunity against trespass allegations, and the nuisance and trespass claims were vitiated by the District's previous consent to the County's operation of a landfill on the property. (Gov. Code, § 815, subd. (a).) Further, the County argued the 1961 lease agreement's "hold harmless" clause did not create a duty to indemnify the District for environmental response costs that were unknown at the time, so the parties did not intend any such coverage.

## D. Rulings

In the rulings, the trial court first resolved the District's own motion by determining that no summary adjudication of indemnity rights was appropriate because the requested declaration of indemnity rights was too broad and sweeping, in light of the evidence raising triable issues on several topics: the intent of the parties regarding the coverage of the lease agreement's hold harmless clause; the effect of the District's own actions that related to the property, that occurred after the County's work on the landfill; and regardless of the District's consent to the landfill arrangement, the court questioned whether it was equitable to require only one party to bear the burden of what was arguably a joint endeavor. Further, the court stated that the Regional Board's orders and instructions were subject to interpretation and did not permit resolution of the indemnity request as a matter of law. (§ 437c, subd. (f)(1).)

Two weeks later, after oral argument on the County's summary judgment motion, the trial court confirmed its tentative ruling on that motion, finding that the entire matter was time-barred, because "the landfill is an improvement within the meaning of CCP § 337.15(a)." The court relied on *Gaggero, supra,* 124 Cal.App.4th 609, to support its conclusions that in this case, "no matter how penned, the District's expenditures and basis for this action result from actions to address physical defects of the landfill, and this is supported by the allegations of the FAC. Finally, the undisputed evidence shows that the landfill at issue was a one-time activity that was complete in the 1960s. [Citation.] District's assertions that the purported failure and refusal of County to comply with its statutory and contractual duties does not qualify as an action to recover damages for 'latent defects' are unsupported and a matter of semantics. There is absolutely no evidence presented to indicate either party intended that the Landfill be considered County's land or property, or that County contracted with District to keep building or to continue construction. While problems came about after the fact, which largely stemmed from newly implemented environmental laws, the evidence is undisputed that the Landfill was a one-time activity that was complete in the 1960s. Accordingly, the motion is granted on this ground." In issuing its ruling, the trial court noted that this was a complex case with a fair amount of money involved,

based on a complicated series of events that took place over a long time, so that appellate resolution of the questions of law presented would be welcome.

The District appeals.

## DISCUSSION

Although the District's amended complaint pleads a variety of theories to justify an award of damages or costs or other relief, through reliance on the lease, on the sharing agreement, or on statutory duties imposed upon the parties, the summary judgment granted by the trial court was grounded solely on the definitions found in section 337.15. The trial court ruled that, as a matter of law, all of the District's claims for expenditures "result from actions to address physical defects of the landfill."

Our standards of review of a summary judgment are well settled, and may simply be repeated here from this court's opinion in *Gaggero, supra*, 124 Cal.App.4th at page 614: "Summary judgment may be granted only when a moving party is entitled to a judgment as a matter of law. (§ 437c, subd. (c).) In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*), the Supreme Court clarified the law courts must apply in California in ruling on motions for summary judgment. [¶] Where the motion is brought by a defendant, the defendant will bear the burden of persuasion 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.] In *Aguilar* the Supreme Court established summary judgment law in California does not require a defendant conclusively negate an element of the plaintiff's cause of action. Rather, in accordance with federal law: 'All that the defendant need do is to "show[] that one or more elements of the cause of action . . . cannot be established" by the plaintiff. [Citation.]' "

Limitations issues may be resolved on summary judgment if the facts are uncontradicted and susceptible of only a single legitimate inference. (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1054–1055 [100 Cal.Rptr.2d 223].)

To analyze whether the County was properly entitled to summary judgment as a matter of law under section 337.15, we will first examine the nature of this limitations provision and its definitions, and then assess their application to the allegations of the amended complaint. We are mindful that these limitations principles must be applied to a rather complex set of facts, in which the District asserts rights to relief under the 1961 lease, and/or the 1999 sharing agreement, and/or the environmental statutes dating from the 1980's that gave rise to the specific orders of regulatory agencies that were

rendered here, from 1997 through 2000 and beyond. After dealing with the limitations issues, we will address the other arguments raised on appeal.

I

*SCOPE OF SECTION 337.15*

Section 337.15 prohibits the bringing of any action to recover damages "from any person . . . who develops real property or performs or furnishes the design . . . or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for any of the following: [¶] (1) Any latent deficiency in the design . . . or construction of an improvement to . . . real property. [¶] (2) Injury to property, real or personal, arising out of any such latent deficiency. [¶] (b) As used in this section, 'latent deficiency' means a deficiency which is not apparent by reasonable inspection." (*Id.*, subds. (a), (b).)

■ Breaking down this statute, it does not allow (a) an untimely action for damages (b) based on a latent deficiency in construction of an improvement, (c) or based on property injury arising out of any such latent deficiency. We next look to how this statute has been interpreted in similar circumstances.

### A. Nature and Purpose of Statute

■ Generally, for limitations purposes, construction defect allegations may be treated as arising under a contractual theory of breach of warranty (§ 337, subd. 1) or as claims of tortious injury to property (§ 338, subds. (b), (c)). (*Inco Development Corp. v. Superior Court* (2005) 131 Cal.App.4th 1014, 1020–1021 [31 Cal.Rptr.3d 872] (*Inco*); *Liptak v. Diane Apartments, Inc.* (1980) 109 Cal.App.3d 762, 769 [167 Cal.Rptr. 440].) However, section 337.15 treats construction defects differently. In *Inco* the court discussed authorities that have characterized section 337.15 as a statute of repose, which is a particular kind of limitations provision that should be distinguished "from garden variety limitations statutes that simply provide for various periods for the commencement of specified actions." (*Inco, supra,* at pp. 1020–1021.) ■ Thus: "A statute of repose has nothing to do with the date of injury, but bars all suits after the expiration of a specified time from the manufacture or delivery of a product or a transaction. [Citations.] It does not cut off an existing right of action, but rather provides that nothing which happens thereafter can *be* a cause of action." (*Id.* at p. 1020.)

■ When interpreting section 337.15, the courts do not determine when the particular construction defect claim accrued, but rather, the courts measure the timeliness of a cause of action by the date of substantial completion

of the improvement. (*Inco, supra*, 131 Cal.App.4th at pp. 1020–1021.) This approach is consistent with the authority of *Chevron U.S.A. Inc. v. Superior Court* (1994) 44 Cal.App.4th 1009, 1017 [54 Cal.Rptr.2d 324] (*Chevron*), in which the court characterized section 337.15 as a "statute of repose created by the Legislature's fixed starting point and outer limit for latent construction defects."

In *Gaggero, supra*, 124 Cal.App.4th 609, 616, this court relied on Supreme Court authority as follows: " '[t]he purpose of section 337.15 has been stated as "to protect developers of real estate against liability extending indefinitely into the future." [Citation.] [ ] [We have] noted that "[a] contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise." [Citation.]' (*Martinez v. Traubner* (1982) 32 Cal.3d 755, 760 [187 Cal.Rptr. 251, 653 P.2d 1046].)"

### B. Application of Statute

■ For purposes of applying section 337.15, the type of cause of action pled is not dispositive, but instead the nature of the injury or loss alleged will govern. The courts have found this 10-year limitations period will apply to bar a number of types of claims, so long as they allege damage from latent construction defects, within the meaning of the statute. For example, section 337.15 will bar an untimely filing of an action that involves latent construction defects, although it pleads them in terms of breach of contract. (*Moseley v. Abrams* (1985) 170 Cal.App.3d 355, 360–364 [216 Cal.Rptr. 40].) In *Moseley*, the plaintiff's complaints alleged theories of negligence and breach of contract, in the form of improper or substandard construction of apartment balconies, and substandard design by the architects, causing latent defects that were not discovered within the 10-year period. The court in *Moseley* analyzed section 337.15, stating: "Nothing in the language of the section itself suggests that contract actions are exempt from its scope. . . . [T]he section provides in essence that no action, except one based on willful misconduct or fraudulent concealment, may be brought beyond the 10-year limitation *to recover damages for any latent deficiency or any resulting injury to real or personal property*. That working definition fits contract as well as tort actions . . . ." (*Moseley, supra*, 170 Cal.App.3d at p. 362, italics added.)

Likewise, in *Chevron, supra*, 44 Cal.App.4th 1009, 1017, the facts were that Chevron sold and installed on DiSalvo's property certain underground fuel storage tanks, which, over time, contaminated the soil. DiSalvo sued Chevron for reimbursement of money already spent and to be spent to complete the environmental cleanup required by county authorities, contending the contamination was caused by defective installation of the tanks 19

years earlier. Those causes of action were based on theories of negligence, breach of contract, continuing nuisance, continuing trespass, and indemnity. The court held that the allegations of a continuing nuisance *that was caused by a latent construction defect* must be filed within the 10-year statute of limitations. The court said it is consistent to apply section 337.15 to continuing nuisance and continuing trespass causes of action, because this "furthers the Legislature's goal of setting an outside limit to protect contractors from extended liability." (*Chevron, supra*, at p. 1018.) The court in *Chevron* further explained that "when the complaint alleges a latent construction defect leading to a continuing nuisance (or trespass), the first step is to determine whether the action is timely under continuing nuisance (or trespass) principles. Has it been filed before abatement of the nuisance (or trespass) or within three years after abatement? If so, the second step is to determine whether the action has been filed within ten years of the date of substantial completion of the improvement." (*Id.* at pp. 1017–1018.)

Also in *Chevron, supra,* 44 Cal.App.4th 1009, 1018, footnote 4, the court commented: "The Legislature's failure specifically to address the problem of pollution caused by construction did not engraft a pollution exception upon the broad terms of section 337.15."

In *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363 [2 Cal.Rptr.3d 655, 73 P.3d 517], the Supreme Court decided that the 10-year limitations period in section 337.15 for bringing an action for latent defects in construction involving real property (i.e., design or manufacturing defects in the window systems that leaked and caused damage to the homes) is not subject to any equitable tolling during repair efforts by the potential defendants. (Also see *Stoneson Development Corp. v. Superior Court* (1987) 197 Cal.App.3d 178, 180–181 [242 Cal.Rptr. 721] [holding that product liability claims of latent defects may be barred under § 337.15].)

In *Gaggero, supra,* 124 Cal.App.4th 609, the landowners had purchased the property from another landowner, who bought it in an "as-is" condition from the defendant County, which had constructed and operated a landfill on it. When the current landowners, the Gaggeros, discovered there was subsidence on the property due to the ancient landfill, causing damages to structures, they filed a claim and then a complaint against the County: "The complaint alleged causes of action for inverse condemnation, nuisance, negligence, trespass and for recovery of toxic waste response costs. *In particular, the complaint alleged the county was negligent in the manner in which the landfill was planned, designed, owned, occupied and maintained.*" (*Id.* at p. 614, italics added.) The Gaggeros contended that methane gas releases from the landfill and consequent subsidence were the proximate cause of their losses, due to defective construction.

In upholding a grant of summary judgment for the County on limitations grounds, this court held in *Gaggero* that the County's construction and operation of "the landfill was an improvement within the meaning of section 337.15." (*Gaggero, supra,* 124 Cal.App.4th at p. 617.) We reasoned that the term "improvement" in the statute has been broadly construed, and the nature of the work analyzed in other construction defect case law was similar to the work performed by the County in constructing and operating the landfill, so that section 337.15 governed the allegations of those plaintiffs (that their purchased land was defective because of subsidence from the improperly constructed landfill under it). "While the county's primary goal may not have been to obtain a profit from eventual sale of the landfill, in filling it, covering it and selling it, the county was engaged in making the real property suitable for further use by others. Section 337.15 and the cases which have interpreted it make it clear, in enacting the statute, the Legislature's unambiguous intention was to put a temporal limit on liability for individuals and entities engaged in these sorts of purposeful alterations to and transfers of real property." (*Gaggero, supra,* at p. 618.) (However, we do not interpret this general statement regarding "transfers" of real property as limiting the scope of coverage of § 337.15 to fact patterns in which the subject property has been transferred.)

This court also rejected an argument by the Gaggeros that "even if the county's activities in constructing and operating the landfill are governed by section 337.15, the landfill is continuing to produce methane gas, which in turn creates the soil subsidence, and is therefore a continuing nuisance. The Gaggeros reason that the landfill, as a continuing nuisance, continually gives rise to causes of action. [Citation.] [¶] However, the continuing nature of a nuisance does not extend the 10-year limit imposed by section 337.15. [Citations.] 'The continuing nuisance or trespass theory allows for deferral of the starting date of the statute of limitations in much the same way as does the discovery rule. Neither theory or rule may override the statute of repose created by the Legislature's fixed starting point and outer limit for latent construction defects. . . . [¶] . . . [¶] "[T]he event which triggers the 10-year period is the date of substantial completion of the improvement." [Citations.]' " (*Gaggero, supra,* 124 Cal.App.4th at p. 618, quoting *Chevron, supra,* 44 Cal.App.4th at p. 1017.) This reasoning applies where the defective construction is the proximate cause of the plaintiff's losses. (*Gaggero, supra,* at p. 619.)

Having set forth these examples of the applicability of section 337.15, we next turn to the factual and legal context of our case.

## C. Current Causes of Action; Nature of Rights to Relief Asserted by District

As outlined above, the term "improvement" in section 337.15 has been given a very broad interpretation in that factual context. (*Gaggero, supra,* 124 Cal.App.4th 609, 615.) We agree with the County that this landfill amounts to an "improvement" within the meaning of section 337.15, but that characterization alone is not dispositive. We still must inquire into the nature of the claims that the District is alleging, first contractual, then statutory, to determine the essential character of the rights it is seeking to vindicate, for purposes of analyzing the appropriate limitations period.

In 4 Witkin, California Procedure (5th ed. 2008) Pleading, section 36, page 101, the authors set forth rules for analyzing the rights asserted by a cause of action. The focus should be on "the injury to the plaintiff, and not the particular legal theory of the defendant's wrongful act." (*Ibid.*) Likewise, analysis of a cause of action must distinguish between the assertion of the particular primary right and duty (and their violation), and the remedy or relief that is sought to vindicate the right or duty. "The violation of one primary right may sometimes give rise to two or more remedial rights, entitling the plaintiff to two or more remedies or forms of relief. The fact that several forms of relief are sought, whether legal or equitable or both, does not mean that there is more than one cause of action. [Citations.]" (*Id.,* § 40, pp. 105–106.) Moreover: "Where a single right and injury are involved, there is only one cause of action even though the complaint seeks distinct legal or equitable remedies; e.g., an action to abate a nuisance and to recover damages; an action to quiet title and to declare void the instrument under which the defendant claims title; an action to reform a contract and to have it specifically enforced or damages awarded in lieu of enforcement. [Citations.]" (4 Witkin, Cal. Procedure, *supra,* § 41, pp. 106–107.)

With these rules in mind, we may analyze the claims pled by the District to determine whether the only rights asserted are those arising out of a latent construction defect, whether they were pled in terms of contract or tort. If so, section 337.15 may provide a bar for an action brought more than 10 years after the substantial completion of the improvement. Alternatively, if the District is not contending the landfill was a defectively constructed improvement, the District may be able to plead rights arising out of some other kind of legal entitlement, separate from the manner of construction of the improvement. "The gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded, determine which statute of limitations applies." (*Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 789 [107 Cal.Rptr.2d 6]; see *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22–23 [32 Cal.Rptr.2d

244, 876 P.2d 1043]; see also *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1165 [71 Cal.Rptr.3d 109].)

■ We first take note of a potential problem regarding the relief requested in the complaint, i.e., damages. The statutory language of section 337.15 prohibits the bringing of an "action . . . to recover damages" from the developer or constructor of an improvement, based on latent deficiencies in the real property improvements or consequential property injury arising out of a latent deficiency. The District is bringing an "action . . . to recover damages," but it also seeks other kind of relief, such as declaratory relief regarding indemnity or contractual rights and duties. In its reply brief, the District seeks to recharacterize the monetary relief sought as "reimbursement for past and future expenditures" that were required to comply with regulatory requirements of the owners/operators of inactive landfills, regardless of how those landfills were designed, operated, or constructed. Thus, the District emphasizes it is not claiming the landfill fell below the applicable standards of care at the time, and it contends the parties would have had to incur some of these environmental compliance costs later on, even if the landfill had been perfect in every respect at the time.

Even if we assume the District will be able to establish some rights to equitable or express indemnity, or declaratory relief to that effect, and assuming the District is entitled to a monetary award of damages on some basis, section 337.15 would not be a bar to such alternative forms of monetary recovery, if such recovery (or damages) were not proximately caused by or did not arise out of the "latent deficiency" identified in the property. Thus, we do not interpret section 337.15 as barring all "actions for damages" in property damage cases (as compared to construction defects/latent deficiency cases), filed more than 10 years after the improvement was completed, if the recovery is sought on some other legal basis not identified in this statute. (*Gaggero, supra*, 124 Cal.App.4th at pp. 617–618.) We accordingly turn to the theories actually being pursued by the District, to identify the rights it is asserting.

### D. Current Causes of Action; Contractual and Indemnity Rights Asserted by District

In its contract claims, the District alleges that both the Regional Board and the LEA have designated the County as an "operator" of the site, within the meaning of the applicable environmental regulations. Those agencies have joined the District in unsuccessfully requesting that the County install groundwater monitoring wells and complete a SWAT investigation at the closed landfill site. (Wat. Code, § 13273; Health & Saf. Code, § 41805.5.) The District has incurred $1.4 million expenses in performing those duties,

and the District relies on the lease and sharing agreement, in its breach of contract claims and for quantum meruit. In particular, the lease contains a "hold harmless" clause, and the sharing agreement contains a reservation of rights, to the effect that the sharing agreement did not affect any existing legal duties or liabilities each party may or may not have under state and federal law, or under the lease provisions. To the extent that such specific contractual rights are asserted, we do not think that the District is merely relying on the manner of construction of the landfill, as a disguised construction defect cause of action alleging a latent deficiency in the property.

It has not yet been established whether the lease's "hold harmless" clause remains viable, and that matter cannot be resolved by labeling the landfill controversy a construction defect case. Moreover, the 1999 sharing agreement was entered into 32 years after the landfill was closed, in light of subsequent physical developments at the site, but also in light of recently enacted, universally applicable legislation and regulation. The District also relies upon the statutory obligations of the County as an operator of the former landfill, as giving rise to some kind of right of reimbursement, whether contractual or equitable. We must accordingly turn to the theories that go beyond breach of contract to determine if only latent deficiencies in property are alleged.

In its fourth through sixth causes of action, the District pleads theories of express and implied indemnity and contribution, based on the 1961 lease agreement's "hold harmless" provision, and based on individual obligations allegedly owed by the County to the District under the sharing agreement, and based on its obligations to comply with environmental regulations. The District has incurred expenses and sought reimbursement, which has not been paid despite demands. The basic rules for evaluating indemnity claims require us to treat an express indemnity provision as creating contractual rights. If those expressly stated rights are well founded, the courts do not resort to implied rights stemming from "the independent doctrine of equitable indemnity. The indemnitor's undertaking may not be extended by implication beyond the terms of his or her agreement. However, this rule does not apply where the indemnity provisions of the contract were not intended to apply to the incident that resulted in the loss." (14A Cal.Jur.3d (2008) Contribution and Indemnification, § 50, p. 417, fns. omitted; see *id.*, § 24, p. 372.) The statutory definition of indemnity is "a contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." (*Id.*, § 23, pp. 370–371; see Civ. Code, § 2772.)

At this point in the litigation, the scope of coverage of the indemnity or "hold harmless" clause has not been determined. The authorities are not in agreement whether the terms "indemnify" and "hold harmless" are synonymous. (See 14A Cal.Jur.3d, *supra*, Contribution and Indemnification, § 23,

p. 371 [" 'indemnify' is an offensive right allowing an indemnitee to seek indemnification, and 'hold harmless' is defensive, the right not to be bothered by the other party itself seeking indemnification."].) In the District's companion motion for summary adjudication of indemnity rights, the trial court correctly noted that the requested declaration of indemnity rights was too broad and sweeping, in light of the evidence raising triable issues about the intent of the parties, the effect of the District's own actions that related to the property, occurring subsequent to the County's work on the landfill, and the equities of requiring one party to bear the burdens of what was started out as similar to a joint endeavor.

    In any case, an indemnity obligation may apply either to indemnity against loss or to indemnity against liability. "Whether an instrument embodies an agreement to indemnify against actual loss only, against liability only, or against both is determined from an examination of the instrument, with a view to ascertaining the intent of the parties. Thus, a contract indemnifying against loss, damages, or expenses that one may sustain or for which one may become liable in consequence of a certain act is an agreement to indemnify against liability as well as against actual loss, because the words are apt and unmistakable and must receive their natural meaning. However, the language of an instrument may be such that the indemnity described may be construed as covering not only liability, but also loss or damages in the alternative, so that where a right is lost under one interpretation a remedy remains under the other." (14A Cal.Jur.3d, *supra*, Contribution and Indemnification, § 52, pp. 420–421, fns. omitted.) "The distinction is between contracting that an event will not happen and contracting to indemnify against the consequences of the event if it should happen." (*Ibid.*, fn. omitted.)

With these principles in mind, we return to the question of whether these contract-based claims are confined to allegations that the County work at the landfill constituted or created a latent deficiency in real property. We are also mindful that the District's 10th, 11th and 12th causes of action seek injunctive and declaratory relief to require the County to address its "past, present and future legal and contractual responsibilities with respect to the landfill." These allegations are broad enough to encompass theories of both express and implied equitable indemnity. As such, the District has not grounded all of its alleged contractual rights in the manner of construction of the landfill, and section 337.15 does not clearly bar the entirety of this complaint. As the court explained in *Inco*, *supra*, 131 Cal.App.4th at page 1020, section 337.15 is correctly viewed as a statute of repose that does not apply "traditional concepts of accrual of a claim, but is tied to an independent, objectively determined and verifiable event, i.e., the date of substantial completion of the improvement."

Here, the circumstances of this landfill, showing an evolving and changing set of conditions involving methane gas development and water contamination, together with the circumstances of later enacted environmental legislation and regulation designed to address such problems, make it inappropriate to view the District's allegations as equivalent to a latent deficiency in a completed improvement. The District's alleged harm and causation of harm cannot be measured from the date of completion. Rather, the District is asserting its financial injury was proximately caused by breaches of arrangements reached by the parties in dealing with the property, regardless of how its condition was originally created. For this reason, we do not view the primary right asserted by the District as a right to a landfill that was constructed within the applicable standard of care. The observation of the court in *Chevron, supra*, 44 Cal.App.4th at page 1018, footnote 4, that section 337.15 does not contain a "pollution exception" is not applicable to the types of contract-based rights asserted here.

### E. Current Causes of Action; Statutory or Tort Rights Asserted by District

In the seventh through ninth causes of action, damages for nuisance, trespass, and inverse condemnation are sought for the County's alleged interference with the District's use and benefit of the site as a school and playground. The condition of the site required installation of monitoring wells and equipment to measure methane gas and other contamination at this site. Also, the District's remaining causes of action seek a declaration of the comparative liability between the County and the District, with regard to costs incurred for environmental cleanup, both past and future, due to enforcement of federal, state and local laws and regulations.

These laws include California Code of Regulations, title 27, Environmental Protection, division 2, Solid Waste, subdivision 1, providing "Consolidated Regulations for Treatment, Storage, Processing or Disposal of Solid Waste." The applicability of this subdivision is explained in California Code of Regulations, title 27, section 20012, as allowing a regional board (for water quality), an enforcement agency, and the California Integrated Waste Management Board, to implement coordinated standards where it is necessary to do so to protect water quality. This title sets forth exhaustive regulatory provisions for these administrative agencies to supervise and enforce the monitoring and cleanup of solid waste and its effects at landfills, whether they are open or closed. California Code of Regulations, title 27, section 20164 provides those coordinating agencies shall use the same definitions of terms.

For example, California Code of Regulations, title 27, section 20180 provides regulation of the "Owner and Operator" of such a site: "Responsibility for compliance with the standards in this chapter shall rest with both the

owner and the operator. If specifically designated, the operator is considered to have prime responsibility for compliance; however, this does not relieve the owner of the duty to take all reasonable steps to assure compliance with these standards and any assigned conditions."

In California Code of Regulations, title 27, section 20080, the scope of regulation by the State Water Resources Control Board (SWRCB) is extended to "pertain to water quality aspects of discharges of solid waste to land for treatment, storage, or disposal. The SWRCB-promulgated regulations in this subdivision establish waste and site classifications and waste management requirements for solid waste treatment, storage, or disposal in landfills, surface impoundments, waste piles, and land treatment units."

Under California Code of Regulations, title 27, section 20164, the "Operator" means the landowner, or another person who, through a lease, franchise agreement or other arrangement with the landowner, becomes legally responsible to the state for complying with all applicable requirements for a solid waste facility or disposal site (e.g., "(D) closing and maintaining the site during the postclosure maintenance period" (*ibid.*)). Technical standards for such maintenance are set forth in California Code of Regulations, title 27, section 21090, "Closure and Post-Closure Maintenance Requirements for Solid Waste Landfills." These control such items as the type of covering over the site, slope requirements, drainage, etc.

The County argues the complex technical details of such regulations about the maintenance and safeguards at the property show the District must be alleging only a type of latent construction defect, under all the circumstances. The County also argues that under *Chevron*, similar allegations were held to be time-barred, because those allegations were about a continuing nuisance *that was caused by a latent construction defect*, and therefore had to be filed within the 10-year statute of limitations. (*Chevron, supra*, 44 Cal.App.4th at p. 1017.) The Legislature's goal in enacting section 337.15 was identified as "setting an outside limit to protect contractors from extended liability." (*Chevron, supra*, at p. 1018.) This is not a goal that can be implemented here by upholding this grant of summary judgment to the County, because the District has also made colorable contract arguments, as well as express and implied indemnity claims, and allegations of statutory duties of the County as an operator, from which the District believes it can make adequate showings of proximate cause of its losses. Those losses could be remedied through the requested reimbursement of expenses, on one or more of the substantive theories pled. (See *Gaggero, supra*, 124 Cal.App.4th at pp. 615–618.)

We therefore disagree that section 337.15 bars this entire action as a matter of law, and the trial court erred in concluding that "no matter how penned, the District's expenditures and basis for this action result from actions to address physical defects of the landfill." In light of the independent

contractual and statutory duties pled, the trial court missed the point in stating: "There is absolutely no evidence presented to indicate either party intended that the Landfill be considered County's land or property, or that County contracted with District to keep building or to continue construction. While problems came about after the fact, which largely stemmed from newly implemented environmental laws, the evidence is undisputed that the Landfill was a one-time activity that was complete in the 1960s." Rather, because the County was an operator of the landfill, and because later enacted environmental legislation may be applied to affect the rights of both owners and operators of closed landfills, the District's allegations go beyond those of damage caused by a latent deficiency in an improvement to real property, such as section 337.15 addresses.

In reaching this conclusion, we need not discuss issues of legislative intent of Water Code section 13273 or Health and Safety Code section 41805.5, as they might have affected an interpretation of any statutory duties of the County. Those arguments were not fully developed in the summary judgment proceedings, and the plain statutory language discussed above sufficiently supports our application of limitations rules.

II

### REMAINING ARGUMENT ON APPEAL

Since the trial court granted summary judgment on the applicability of section 337.15, it did not reach the alternative ground argued by the County, that under Government Code section 911.2, the action was also untimely for lack of presentation of a timely governmental claim. (§ 337, subd. 1 [four-year contract statute of limits]; see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737–746 [68 Cal.Rptr.3d 295, 171 P.3d 20].) Arguably, the District's amended complaint might be subject to challenge under the provisions of Government Code section 911.2, relating to "a cause of action for death or for injury to person or to personal property or growing crops" (not later than six months after the accrual of the cause of action), or under the one-year provision for claims relating to any other cause of action (not later than one-year after the accrual of the cause of action). We note that governmental claims were presented in both 1999 and 2004, giving rise to at least a possibility that claims requirements may have been satisfied or waived here. Those complex issues of exceptions from and tolling of claims requirements are not subject on this record to being resolved as a matter of law, and moreover, the trial court did not address those matters in its ruling. In any case, summary judgment should not have been granted on the limitations ground cited, and any further proceedings may flesh out those remaining issues.

## DISPOSITION

Summary judgment is reversed. Each party to bear its own costs.

McConnell, P. J., and Benke, J., concurred.